Jason R. Dawson (SBN 208906)
John P. Nordlund (SBN 286153)
Melissa D. Owens (SBN 327295)
JACKSON LEWIS P.C.
225 Broadway, Suite 2000
San Diego, CA  92101
Telephone:  (619) 573-4900
Facsimile:  (619) 573-4901
Jason.Dawson@jacksonlewis.com
John.Nordlund@jacksonlewis.com
Melissa.Owens@jacksonlewis.com

Attorneys for Defendant
OMNI HOTELS MANAGEMENT
CORPORATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE MARTINEZ, an individual, ERIC TRUMPE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION, and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No.:   **'20 CV 1924 MMA BLM**<br><br>**DECLARATION OF JOHN P. NORDLUND IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA BY OMNI HOTELS MANAGEMENT CORPORATION PURSUANT TO 28 U.S.C. SECTION 1331, 1367 AND 1441(A), (C) (FEDERAL QUESTION)**<br><br>[*Filed concurrently with Notice of Removal; Declaration of Anthony Belef; Notice of Notice of Filing Answer in State Court; Notice of Interested Parties; and Civil Case Cover Sheet*]<br><br>State Court<br>Complaint filed:  July 1, 2020<br>Trial Date:      Not Assigned |

///

///

///

## <u>DECLARATION OF JOHN P. NORDLUND</u>

I, John P. Nordlund, hereby declare as follows:

1.       I am an attorney duly admitted to practice law before all the courts in the State of California and the United States District Court for the Southern District of California, in which I am in good standing.  I am an attorney with the law firm of Jackson Lewis P.C., counsel of record for Defendant OMNI HOTELS MANAGEMENT CORPORATION (Defendant). I have personal knowledge of the facts stated in this Declaration and if called upon to do so, I could and would competently testify to them.  I submit this Declaration in support of Defendant's Notice of Removal of Civil Action to the United States District Court for the Southern District of California Pursuant to 28 U.S.C. Section 1331, 1367 and 1441(a), (c) (Federal Question).

2.       On July 1, 2020, Plaintiffs ENRIQUE MARTINEZ (Martinez) and ERIC TRUMPE (Trumpe) (collectively, "Plaintiffs") filed a representative action complaint under the California Private Attorney General Act, Labor Code section 2698 *et seq*. (PAGA) in the Superior Court of the State of California, County of San Diego, entitled *ENRIQUE MARTINEZ, an individual, ERIC TRUMPE, an individual v. OMNI HOTELS MANAGEMENT CORPORATION, and DOES 1 through 25, Inclusive*, Case No. 37-2020-0002267-CU-OE-CTL (Complaint). The Complaint alleges a single cause of action under PAGA, which asserts the following violations: (1) Failure to Calculate Plaintiffs' Aggrieved Employees Base Rate Correctly for the Purpose of Overtime Payment; (2) Failure to Calculate Plaintiffs and Aggrieved Employees Base Rate Correctly for the Purposes of Sick-Time Payments; (3) Failure to Provide Accurate Wage Statements to Plaintiffs and Aggrieved Employees; (4) Failure to Authorize or Permit Rest Breaks; and (5) Failure to Pay All Wages Due Upon Termination of Employment. A true and correct copy of Plaintiffs' Complaint and all corresponding documents, including the Summons, Notice of Case Assignment and Case Management Conference, Stipulation to Use Alternative Dispute Resolution (ADR), and Alternative Dispute Resolution (ADR) Information sheet, are filed concurrently herewith as **Exhibit A.**

3.      On August 26, 2020, on behalf of Defendant, I signed and returned, via email, Notice and Acknowledgment of Receipt of the Summons and Complaint pursuant to California Code of Civil Procedure section 415.30. A true and correct copy of the executed and returned Notice and Acknowledgement of Receipt dated August 26, 2020 is filed concurrently herewith as **Exhibit B.**

4.      On September 23, 2020, Defendant filed an Answer to Plaintiffs' Complaint in State Court. A true and correct copy of Defendant's State Court Answer is filed concurrently herewith as **Exhibit C.**

5.      Other than the filing of the Complaint and filing of Defendant's Answer, no further proceedings have taken place in the State Court Action.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 25th day of September 2020, at San Diego, California.


_____
John P. Nordlund

4821-5468-2572, v. 2

DECLARATION OF JOHN P. NORDLUND

# EXHIBIT A

1   Justin Hewgill SBN 259528
    Efaon Cobb SBN 282228
2   HEWGILL COBB & LOCKARD, APC
    1620 Fifth Avenue, Suite 325
3   San Diego, CA 92101
    Ph: 619-432-2520
4   Fx: 619-377-6026
    Justin@hcl-lawfirm.com
5   Efaon@hcl-lawfirm.com

6   Attorneys for Plaintiffs,
    ENRIQUE MARTINEZ, and ERIC TRUMPE

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**07/01/2020** at 02:25:08 PM

Clerk of the Superior Court
By Kristin Sorianosos,Deputy Clerk

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **SAN DIEGO CENTRAL DIVISION**

10  ENRIQUE MARTINEZ, an individual,          Case No.   37-2020-00022617-CU-OE-CTL
    ERIC TRUMPE, an individual,
11                                            **PLAINTIFF'S COMPLAINT FOR:**

12              Plaintiffs,                    **REPRESENTATIVE ACTION
                                              COMPLAINT UNDER THE PRIVATE
13        v.                                   ATTORNEY GENERAL ACT ("PAGA")
                                              FOR:**
14  OMNI HOTELS MANAGEMENT                      1.  Failure to calculate Plaintiffs' and
    CORPORATION, and DOES 1 through                 aggrieved employees base rate
15  25, Inclusive,                                  correctly for the purpose of overtime
                                                    payment;
16              Defendants.                     2.  Failure to calculate Plaintiffs and
                                                    aggrieved employees base rate
17                                                  correctly for the purposes of sick-time
                                                    payments;
18                                             3.  Failure to provide accurate wage
                                                    statements to Plaintiffs and aggrieved
19                                                  employees;
                                               4.  Failure to authorize or permit rest
20                                                  breaks; and
                                               5.  Failure to pay all wages due upon
21                                                  termination of employment.
22
23                                            **[JURY TRIAL DEMANDED]**
24
25
26
27
28

1

COMES NOW, the Plaintiff alleging against Defendants as follows:

## INTRODUCTION

1.  Plaintiffs worked as banquet servers for Defendants at the Omni La Costa Spa and Resort. Banquet servers and many other types of employees of the Defendant at that hotel receive both an hourly wage and "service fees". During the course of employment Defendants violated wage and hour law by refusing to include Plaintiffs' and similar situated employees service fees in calculations of overtime and sick-time rates of pay. Additionally, Defendants systematically fail to authorize and permit Plaintiffs and similarly situated employees taking rest breaks. Plaintiffs were each aggrieved by these violations, and now seek civil penalties under the California Private Attorney General Act ("PAGA") for these violations.

## PARTIES AND
## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2.  Plaintiff ENRIQUE MARTINEZ, (hereinafter "Plaintiff" or "Plaintiffs" collectively) is, and at all times relevant herein was, a resident of the County of San Diego in the State of California.

3.  Plaintiff ERIC TRUMPE, (hereinafter "Plaintiff" or "Plaintiffs" collectively) is, and at all times relevant herein was, a resident of the County of San Diego in the State of California.

4.  Plaintiffs believe and thereon allege that at all times relevant herein, Defendant OMNI HOTELS MANAGEMENT CORPORATION, (hereinafter "OMNI") is a business entity, form unknown.

5.  On information and belief, OMNI is doing business in the State of California, County of San Diego. Specifically, OMNI is and has during all relevant times operated the Omni La Costa Resort and Spa, where Plaintiffs and fellow aggrieved employees work.

6.  Plaintiffs are ignorant to the true names and capacities of Defendants sued herein as DOES 1 through 25, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained.

7.  Plaintiffs believe and thereon allege that each "Doe" Defendant is responsible in some manner for the occurrences herein alleged, and Plaintiff's injuries and damages as herein alleged are

2

1   directly, proximately and/or legally caused by Defendants and their acts.

2   8.   Plaintiffs are informed and believe and thereon allege that the aforementioned DOES are

3   somehow responsible for the acts alleged herein as the agents, employers, representatives or

4   employees of other named Defendants, and in doing the acts herein alleged were acting within

5   the scope of their agency, employment or representative capacity of said named Defendants.

6   9.   The tortious acts and omissions alleged herein were performed by Defendants' management

7   level employees. Defendants allowed and/or condoned a continuing pattern of unlawful

8   practices in violation of the California Labor Code, and have caused, and will continue to

9   cause, Plaintiff's economic damage in an amount to be proven at trial.

10   <u>**JURISDICTION AND VENUE**</u>

11   10.   This Court has jurisdiction over all causes of action asserted herein pursuant to the

12   California Constitution, Article VI, §10, because this case is a cause not given by statute to

13   other trial courts. The monetary damages sought by Plaintiffs total more than this Court's

14   jurisdictional minimum.

15   11.   Plaintiffs are citizens of California because their domiciles are in California.

16   12.   This Court has jurisdiction over Defendants because they conduct substantial business in

17   California and have intentionally availed themselves of the laws and markets of California

18   through the operation of their business in California.

19   13.   Venue is proper in this Court because Defendants do not reside in the State of California.

20   <u>**PRIVATE ATTORNEY GENERAL ACT ALLEGATIONS**</u>

21   14.   Plaintiff ENRIQUE MARTINEZ was employed by Defendants during the statutory PAGA

22   period, and was aggrieved by one or more the violations of the California Labor Code

23   described in this complaint.

24   15.   Plaintiff ERIC TRUMPE was employed by Defendants during the statutory PAGA period,

25   and was aggrieved by one or more the violations of the California Labor Code described in

26   this complaint.

27   16.   Plaintiff ENRIQUE MARTINEZ was employed by Defendants when Defendants' policies

28   violated California wage and hour law during the statutory period.

3

17. Plaintiff ERIC TRUMPE was employed by Defendants when Defendants' policies violated California wage and hour law during the statutory period.

18. Plaintiffs, as aggrieved employees, bring this action on their own behalf and on behalf of other aggrieved current, former, and future employees of Defendants who work(ed) for Defendants in the state of California, and who are/were subjected to the policies of the Defendants when Defendants:

    a. Paid an illegally low overtime rate;

    b. Paid an illegally low paid sick leave rate;

    c. Failed to authorize and permit rest breaks;

    d. Failed to provide accurate wage statements; and

    e. Failed to pay all wages due upon termination of the employment relationship.

**Illegally Low Overtime and Sick Pay Rates**:

19. Plaintiffs work for the Defendants as banquet servers at the La Costa resort in San Marcos, California. Plaintiffs have worked for Omni while the California Health Workplaces Healthy Families Act, ARTICLE 1.5. 'Paid Sick Days' [sections §§ 245-249] as has been in place. During this period the Omni has illegally calculated the rate of the sick leave pay in contradiction to the mandate of Labor Code Section § 246(l)(1)-(2). Omni pays sick leave at simple hourly rates of Plaintiffs and similarly situated employees, and refuse to include all compensation in calculating the sick leave rate, as required by Labor Code Section § 246(l)(1)-(2). Specifically, Plaintiffs and many similarly situated employees are paid significant sums of wages in the form of "service fees" up and above each employees' simple hourly rate. Omni has refused to include these wages in their calculations sick leave rates.

20. Plaintiffs and similarly situated employees have been paid sick leave at an illegally low rate due to this code violation within the PAGA period.

21. Similarly, Omni pays its employees, including Plaintiffs and similarly situated employees, an illegally low overtime rate in violation of the Labor Code, Industrial Wage Order 5, and *Alvarado v Dart* (2019) 4 Cal 5th 542. Omni does this by refusing to include all wages in calculating base rates, and paying overtime rates based on multiples of simple hourly rates.

4

22.   The Defendants pay their employees an hourly rate, and a bonus or "service fees".

23.   However, when Defendants pay overtime premiums to workers who receive service fee bonuses, including Plaintiffs, they failed to include the bonuses in their overtime base rate calculations - instead Defendants simply pay overtime based on the hourly rate.  Because many employees, including Plaintiffs make a significant portion of their income from service fees, this amounts to a significant under calculations and underpayment of overtime.

24.   Here Omni failed to calculate a correct overtime rate by refusing to include all wages earned in the overtime rate calculations. Plaintiffs and similarly situated employees owed unpaid overtime premiums.

**Failure to Authorize and Permit Rest Breaks**:

25.   Omni has a policy and practice of failing to authorize and permit rest breaks as required by the Labor Code and Industrial Wage Order 5, and *Brinker v Superior Court* (2012) 53 Cal 4th 1004. The Defendants fail to provide scheduled rest breaks times, fail to allow employees including Plaintiffs to take rest breaks, and reprimand employees who do take rest breaks.

26.   IWC Wage Order No. 5-2001, item 12 requires employers to authorize and permit off-duty rest periods during which an employee must be relieved of any and all work-related duties. *Brinker v Superior Court* (2012) 53 Cal 4th 1004; *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 269. Additionally, a lawful off-duty rest period is not provided where an employer fails to relinquish control over how employees spend their time. *Id*. Under Labor Code § 226.7, an employer is required to pay an employee one (1) additional hour of pay at the employee's regular rate of pay for each workday in which a lawful rest period was not provided. *See also* IWC Wage Order No. 5-2001, item 12.

27.   Plaintiffs assert that Defendants have a practice and policy of failing to authorize or permit rest breaks. Plaintiffs and similarly situated employees are owed unpaid rest period premiums.

**Defendants failed to provide accurate wage statements:**

28.   Labor Code § 226(a) requires employers to provide employees wage statements stating among other things hourly rates of pay, including overtime rates. Labor Code § 246(i) requires employers provide sick leave rates on or with wage statements. Defendants failed to accurately

5

1    record and state overtime and sick leave rates. This violates Labor Code §§ 226(a),(e), 226.3,

2    and 246(i).

3    **Defendants failure to pay all wages due at the time of the termination of employment:**

4    29.    The Defendants failed to pay Plaintiffs and similarly situated employees all wages due upon

5    termination in violation of Labor Code 201, 202, and 203. Plaintiffs and similarly situated

6    employees are due rest break premium wages, sick leave wages, and overtime.

7    **FIRST CAUSE OF ACTION**

8    **PRIVATE ATTORNEY GENERAL ACT**

9    **(Against All Defendants)**

10    **[Cal. Labor Code §§ 2698-2699.5]**

11    30.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the

12    preceding and subsequent paragraphs as though fully set forth herein.

13    31.    Plaintiffs are "aggrieved employees" within the meaning of California Labor Code § 2699(c),

14    and proper representatives to bring a civil action on behalf of themselves and other current

15    and former employees of Defendants pursuant to the procedures specified in California

16    Labor Code §2699.3, because Plaintiffs were employed by Defendants and the alleged

17    violations of the California Labor Code were committed against Plaintiffs.

18    32.    Pursuant to the PAGA, Labor Code §§ 2698-2699.5, Plaintiffs seek to recover civil penalties,

19    including but not limited to penalties under California Labor Code §§ 2699, 203, 210, 225.5,

20    248.5 1197.1, 1199, and the applicable IWC Wage Order, from Defendants in a

21    representative action for the violations set forth above, including but not limited to violations

22    of California Labor Code §§ 98.6, 1102.5, 201, 202, 203, 204, 226, 226.3, 245-249 ,1194, 1197,

23    and 1198.

24    33.    Plaintiffs seek civil penalties pursuant to the PAGA for violations of the Labor Code,

25    including:

26        a.    Paid an illegally low overtime rate (Labor Code §§ 200, 204, 210, 510, 1194, 1194.2,

27        1197, 1197.1 and 1198);

28        b.    Paid an illegally low paid sick leave rate (Labor Code §§ 246(l)(1)-(2));

6

      c.   Failed to authorize and permit rest breaks (Labor Code §§ 226.7, 558, and IWC Wage Order #5-2001);

      d.   Failed to provide accurate wage statements (Labor Code §§ 226, 226.3 246(i)); and

      e.   Failed to pay all wages due upon termination of the employment relationship (Labor Code §§ 200, 201, 202, and 203).

34.    Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs pursuant to California Labor Code § 2699(g)(1).

35.    Plaintiffs have satisfied the requirements of Labor Code § 2699.3. On March 11th, 2020, Plaintiffs sent notice to Defendants and the California Labor and Workforce Development Agency (LWDA) notifying them of the specific violations and the facts and theories supporting those violations. The Department of Industrial Relations chose to investigate, and then to extend their investigation by the statutorily allowed period of time, but have not issued a citation to Mortenson.  Plaintiffs have, therefore, exhausted their administrative remedies as required by Labor Code §2699.3.

///

PLAINTIFFS' COMPLAINT FOR DAMAGES

**WHEREFORE** Plaintiff prays for the following relief:

1.     For civil penalties pursuant to the PAGA (Labor Code 2698 et seq.);

2.     For costs of suit, including attorneys' fees as permitted by law, including those available pursuant to Labor Code section 2699(g);

3.     For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

4.     For such other and further relief as the Court deems proper and just under all the circumstances.


Dated:   July 1, 2020           HEWGILL COBB & LOCKARD, APC


Justin Hewgill, Esq.

Attorney for PLAINTIFFS

8

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

OMNI HOTELS MANAGEMENT CORPORATION, and DOES 1
through 25, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ENRIQUE MARTINEZ, an individual, ERIC TRUMPE, an individual,

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/01/2020** at 02:25:08 PM
Clerk of the Superior Court
By Kristin Sorianosos,Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  CA Superior Court, San Diego County

330 W Broadway
San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):*  37-2020-00022617-CU-OE-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Justin Hewgill, HEWGILL COBB & LOCKARD, 1620 5th Ave, Ste 325, San Diego, CA 92101, 6194322520

DATE: 07/02/2020
*(Fecha)*

Clerk, by _____ K. Sorianosos _____, Deputy
*(Secretario)* K. Sorianosos *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7073 |

| PLAINTIFF(S) / PETITIONER(S): | Enrique Martinez et.al. |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Omni Hotels Management Corporation |
|---|---|

MARTINEZ VS OMNI HOTELS MANAGEMENT CORPORATION [IMAGED]

| **NOTICE OF CASE ASSIGNMENT**<br>**and CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>37-2020-00022617-CU-OE-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Joel R. Wohlfeil                                   Department: C-73

## COMPLAINT/PETITION FILED: 07/01/2020

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 03/19/2021 | 01:30 pm | C-73 | Joel R. Wohlfeil |

Due to the COVID-19 pandemic, all hearings will be conducted remotely until further notice. Absent an order of the court, personal appearances at the hearing will not be allowed. For information on arranging telephonic or video appearances, contact CourtCall at (888)882-6878, or at www.courtcall.com. Please make arrangements with CourtCall as soon as possible.

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

**NOTICE OF CASE ASSIGNMENT**



# Superior Court of California
## County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:  330 West Broadway | |
| MAILING ADDRESS:  330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:  Central | |

| PLAINTIFF(S):   Enrique Martinez et.al. |
|---|
| DEFENDANT(S):  Omni Hotels Management Corporation |
| SHORT TITLE:   MARTINEZ VS OMNI HOTELS MANAGEMENT CORPORATION [IMAGED] |

| STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2020-00022617-CU-OE-CTL |
|---|---|

Judge: Joel R. Wohlfeil                                     Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                             ☐ Binding private arbitration

☐ Voluntary settlement conference (private)        ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                    ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                    Date: _____

_____          _____
Name of Plaintiff                                   Name of Defendant

_____          _____
Signature                                           Signature

_____          _____
Name of Plaintiff's Attorney                        Name of Defendant's Attorney

_____          _____
Signature                                           Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  07/02/2020

_____
JUDGE OF THE SUPERIOR COURT



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2020-00022617-CU-OE-CTL          CASE TITLE: Martinez vs Omni Hotels Management Corporation [IMAGED

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following
three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** *and*
        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts,
community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help
people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR
as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR,
and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the
particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute
  resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not
  resolve the dispute
- Procedures to learn about the other side's case (discovery),
  jury trial, appeal, and other court protections may be limited
  or unavailable

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR
webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner
so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so.
Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing
relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties
want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand
the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a
decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful
when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help
guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then
decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If
the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final.
With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be
appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the
formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

# EXHIBIT B

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* 259528<br>Justin Hewgill Esq.<br>Hewgill Cobb & Lockard, APC<br>1620 5th Avenue, Suite 325<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-432-2520    FAX NO. *(Optional):* 619-377-6026<br>E-MAIL ADDRESS *(Optional):* contact@hcl-lawfirm.com<br>ATTORNEY FOR *(Name):* Plaintiff, Enrique Martinez, et al. | **FOR COURT USE ONLY** |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego<br>STREET ADDRESS: 330 W Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego 92101<br>BRANCH NAME: Central |
| PLAINTIFF/PETITIONER: Enrique Martinez, et al.<br>DEFENDANT/RESPONDENT: Omni Hotels Management Corporation |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>37-2020-00022617-CU-OE-CTL |

TO *(insert name of party being served):* Omni Hotels Management Corporation

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: 08/19/2020

Justin Hewgill
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
   CMC Notice

*(To be completed by recipient):*

Date this form is signed: August 26, 2020

John P. Nordlund
Attorney for OMNI HOTELS MANAGEMENT CORPORATION
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN DIEGO | COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):          Telephone No.<br>Jason R. Dawson (SBN 208906)          Tel:  619.573.4900<br>John P. Nordlund (SBN 286153)          Fax:  619.573.4901<br>Melissa D. Owens (SBN 327295)<br>JACKSON LEWIS P.C.<br>225 Broadway, Suite 2000<br>San Diego, California  92101 | |
| SHORT CASE TITLE<br>*Martinez, et al. v. Omni Hotel Management Corporation*          **IMAGED FILE** | JUDGE:   Hon. Joel R. Wohlfeil<br>DEPT.:   C-73 |
| ATTORNEYS FOR DEFENDANT<br>OMNI HOTELS MANAGEMENT CORPORATION | Case No.:<br>37-2020-00022617-CU-OE-CTL |

# PROOF OF SERVICE

I, the undersigned, am over 18 years of age, employed in the County of San Diego, California, in which the within-mentioned service occurred; and that I am not a party to the subject cause of action.  My business address is 225 Broadway, Suite 2000, San Diego, California 92101.  On August 26, 2020, I served the following documents:

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT signed 8/26/2020**

***Counsel for Plaintiff***
Justin Hewgill
Efaon Cobb
Hewgill Cobb & Lockard, APC
1620 Fifth Avenue, Suite 325
San Diego, CA  92101
Tel:          619-432-2520
Fax:          619-377-6026
Email:          justin@hcl-lawfirm.com
          efaon@hcl-lawfirm.com

☒          **BY ELECTRONIC SERVICE IN LIEU OF SERVICE BY MAIL, EXPRESS MAIL, OVERNIGHT DELIVERY, OR FACSIMILE TRANSMISSION.** In accordance with California Code of Civil Procedure section 1010.6 in compliance with the Judicial Council's Appendix I, Emergency Rules Related to COVID-19, Emergency Rule 12, I caused the document(s) to be sent to the persons above at the e-mail address(es) listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 26, 2020          _____
          Grace Martin Welter

# EXHIBIT C

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/23/2020** at 08:20:00 PM

Clerk of the Superior Court
By Cecile Van Pelt, Deputy Clerk

1  Jason R. Dawson (SBN 208906)
   John P. Nordlund (SBN 286153)
2  Melissa D. Owens (SBN 327295)
   JACKSON LEWIS P.C.
3  225 Broadway, Suite 2000
   San Diego, CA  92101
4  Telephone:  (619) 573-4900
   Facsimile:  (619) 573-4901
5  Jason.Dawson@jacksonlewis.com
   John.Nordlund@jacksonlewis.com
6  Melissa.Owens@jacksonlewis.com

7  Attorneys for Defendant
   OMNI HOTELS MANAGEMENT
8  CORPORATION

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              COUNTY OF SAN DIEGO, CENTRAL DISTRICT

11

12  ENRIQUE MARTINEZ, an individual, ERIC        Case No.:  37-2020-00022617-CU-OE-CTL
    TRUMPE, an individual,
13                                               [Assigned for all purposes to Hon. Joel R.
                Plaintiffs,                       Wohlfeil, Dept. C-73]
14
          v.                                     **DEFENDANT'S ANSWER TO PLAINTIFFS'**
15                                               **REPRESENTATIVE ACTION COMPLAINT**
    OMNI HOTELS MANAGEMENT                       **UNDER THE PRIVATE ATTORNEY**
16  CORPORATION, and DOES 1 through 25,          **GENERAL ACT ("PAGA")**
    Inclusive,
17                                               **IMAGED FILE**
                Defendants.
18

19                                               Complaint filed:      July 1, 2020
                                                 Trial Date:           Not Assigned
20

21         Defendant OMNI HOTELS MANAGEMENT CORPORATION ("Defendant"), on behalf of

22  itself and for no other entity, hereby responds to the unverified representative action complaint under the

23  Private Attorney General Act ("PAGA") ("Complaint") filed by Plaintiffs ENRIQUE MARTINEZ and ,

24  ERIC TRUMPE (collectively "Plaintiffs") as follows:

25                              <u>**GENERAL DENIAL**</u>

26         Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally and

27  specifically denies each and every allegation contained in the Complaint, and each cause of action of

28  said Complaint, and denies that Plaintiffs or the alleged "aggrieved employees" have been damaged in

                                           1

any sum, or at all, by reason of any act or omission on the part of Defendant.

**AFFIRMATIVE DEFENSES**

As separate and distinct affirmative defenses to Plaintiffs' Complaint, and the causes of action alleged therein, and to each of them, Defendant alleges as follows:

**FIRST AFFIRMATIVE DEFENSE**

**(Preemption)**

1.     Any recovery on Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because Plaintiffs' claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 185 because resolution of this Action requires the Court to interpret one or more provisions of a collective bargaining agreement.

**SECOND AFFIRMATIVE DEFENSE**

**(Abatement/Exclusive Jurisdiction)**

2.     Any recovery on Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, or should be stayed under the doctrine of abatement and the rule of exclusive concurrent jurisdiction because an earlier-filed action purporting to represent Plaintiffs is pending against Defendant in the Superior Court of California, specifically, *Ismael Garcia v. Omni Hotels Management Corporation*, San Diego Superior Court, Case No. 37-2019-00068188-CU-OE-CTL, filed December 23, 2019, and the cases involve the same "subject matter" and/or arise from the "same transaction." (*See Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d. 781, 786-89.)

**THIRD AFFIRMATIVE DEFENSE**

**(Abatement/Stay)**

3.     Any recovery on Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, or should be stayed under the doctrine of abatement pursuant to Code of Civil Procedure sections 430.10(c) and 597 because an earlier-filed action in the Superior Court of California, specifically, *Ismael Garcia v. Omni Hotels Management Corporation*, San Diego Superior Court, Case No. 37-2019-00068188-CU-OE-CTL, filed December 23, 2019, involves the same parties on the same causes of action, given that earlier-filed actions seek to represent Plaintiffs in similar claims against Defendant, and this Action should be stayed until the pending similar earlier filed state actions is

2

resolved to carry out California's "strong principle of comity." (*Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 746-47; *Caiafa v. State Farm Fire & Casualty* (1993) 15 Cal.App.4th 800; *Leadford v. Leadford* (1992) 6 Cal.App.4th 571, 575.)

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

4.     Any recovery on Plaintiffs' Complaint, and each purported claim for relief alleged therein, is barred, in whole or in part, because Plaintiffs' Complaint as a whole, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant upon which relief may be granted.

## FIFTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

5.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by the applicable statute of limitations, including, but not limited to, Code of Civil Procedure section 340(a) and Labor Code section 2699.3.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust)

6.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because Plaintiffs and the allegedly "aggrieved employees" failed to timely and adequately exhaust administrative remedies under California Labor Code section 2699.3, and/or failed to take steps required by the California Labor Code in order to initiate this Action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

7.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, to the extent that Plaintiffs and/or any allegedly "aggrieved employees" entered into an accord and satisfaction of any claim asserted in this Action.

///

///

///

DEFENDANT'S ANSWER TO PLAINTIFFS' REPRESENTATIVE ACTION COMPLAINT UNDER
THE PRIVATE ATTORNEY GENERAL ACT ("PAGA")

### EIGHTH AFFIRMATIVE DEFENSE

### (Claims Released)

8.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, to the extent that Plaintiffs and/or any allegedly "aggrieved employees" previously released the claims asserted in this Action.

### NINTH AFFIRMATIVE DEFENSE

### (*Res Judicata*/Collateral Estoppel)

9.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, to the extent that the claims of Plaintiffs and/or any allegedly "aggrieved employees" are barred by the doctrines of *res judicata* and/or collateral estoppel.

### TENTH AFFIRMATIVE DEFENSE

### (Equitable Doctrines)

10.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by the equitable doctrines of laches, estoppel, waiver, and unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

### (No Standing)

11.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because Plaintiffs lack standing.

### TWELFTH AFFIRMATIVE DEFENSE

### (Defendant Entitled to Set-Off and Recoupment)

12.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because Defendant is entitled to a set-off for amounts Plaintiffs and/or the allegedly "aggrieved employees" owe Defendant for receipt of any wages and other benefits to which they were not entitled and/or did not earn. With regard to any potential award of damages to Plaintiffs and/or allegedly "aggrieved employees," Defendant is entitled, under the equitable doctrine of set-off and recoupment, to offset all overpayments to and obligations of Plaintiffs and/or allegedly "aggrieved employees" owed to Defendant against any judgment that may be entered against Defendant.

///

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Waiver of Meal Periods and/or Rest Breaks)**

13.     Plaintiffs' purported cause of action based upon alleged meal period and rest break violations, are barred, in whole or in part, because Defendant provided Plaintiffs and allegedly "aggrieved employees" all required meal periods and rest breaks in compliance with California law and Plaintiffs and/or allegedly "aggrieved employees" voluntarily waived the right to take the provided meal periods and rest breaks.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Voluntary Refusal of Meal Periods and/or Rest Breaks)**

14.     Plaintiffs' purported cause of action based upon alleged meal period and rest break violations, are barred, in whole or in part, because Defendant provided Plaintiffs and allegedly "aggrieved employees" all required meal periods and rest breaks in compliance with California law and Plaintiffs and/or allegedly "aggrieved employees" did not take the opportunity to take a work-free break by voluntarily refusing, as described in *Brinker Rest. Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1053.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(No Claim Based Upon Waiting Time Penalties Owed)**

15.     Plaintiffs' purported cause of action based upon alleged failure to pay all wages due upon termination of employment, is barred, in whole or in part, because Plaintiffs and/or allegedly "aggrieved employees" remain employed by Defendant, so they are not entitled to PAGA penalties based upon Labor Code section 203.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(No Willful Violation/ Good Faith Conduct)**

16.     To the extent Plaintiffs or any other alleged "aggrieved employee" seek penalties for any alleged willful failure to comply with the requirements of the California Labor Code, such penalties are barred because Defendant did not willfully violate any provision of the California Labor Code.

///

///

DEFENDANT'S ANSWER TO PLAINTIFFS' REPRESENTATIVE ACTION COMPLAINT UNDER
THE PRIVATE ATTORNEY GENERAL ACT ("PAGA")

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Equitable Relief Available)

17.     Plaintiffs and allegedly "aggrieved employees" are not entitled to any equitable or injunctive relief as prayed for in the Complaint given that Plaintiffs and allegedly "aggrieved employees" have not suffered any irreparable injury based on any alleged conduct of Defendant, and Plaintiffs and allegedly "aggrieved employees" have an adequate remedy at law for any such conduct.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Failure to Use Ordinary Care)

18.     Defendant is informed and believes, and thereon alleges, that any recovery on Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by California Labor Code sections 2854 and 2856 in that Plaintiffs and allegedly "aggrieved employees" failed to use ordinary care and diligence in the performance of their duties and failed to comply substantially with the reasonable directions of Defendant.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Avoidable Consequences)

19.     The Complaint, and each cause of action alleged therein, is barred, in whole or in part, under the avoidable consequences doctrine. Defendant alleges that it had procedures in place for reporting work-related issues. To the extent that Defendant had compliant meal and rest period policies, Defendant alleges that Plaintiffs and allegedly "aggrieved employees" failed to utilize preventive and corrective measures.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Comparative Fault and/or Negligence)

20.     Without admitting that Plaintiffs or any allegedly "aggrieved employees" are entitled to any recovery, Defendant alleges that any recovery to which Plaintiffs or any allegedly "aggrieved employees" might be entitled must be reduced by reason of their own fault and/or negligence.

///

///

///

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (PAGA Claims Are Unmanageable)

21.     The claims and causes of action under PAGA present unmanageable and unduly individualized issues of fact and law, and trial of those claims and causes of action on a representative basis unfairly hinders Defendant's right to a fair adjudication of those claims and causes of action, and to present individualized defenses to those claims and causes of action, thereby denying Defendant's right to due process of law as guaranteed by the California and U.S. Constitutions.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Double Penalties)

22.     Any recovery on any of the PAGA causes of action is barred, in whole or in part, because such violates the due process rights of Defendant pursuant to the United States Constitution and the California Constitution to the extent the California Labor Code independently provides penalties for the conduct alleged in the FAC and PAGA imposes double penalties.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Excessive Fines)

23.     Plaintiffs and allegedly "aggrieved employees" are barred from recovering the damages and penalties sought in the Complaint to the extent such requests are excessive and violate the Fourteenth Amendment to the United States Constitution.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Penalties Unjust, Arbitrary, Oppressive, or Confiscatory)

24.     An award of penalties under PAGA, if any, would be unjust, arbitrary, oppressive, and/or confiscatory within the meaning of California Labor Code section 2699(e)(2).

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (No Jury Trial)

25.     Defendant asserts that to the extent Plaintiffs and allegedly "aggrieved employees" seeks or civil penalties under PAGA, they are not entitled to a jury trial, and the claims must instead be adjudicated by way of a bench trial. (*See Hodge v. Superior Court* (2006) 145 Cal.App.4th 278.)

///

DEFENDANT'S ANSWER TO PLAINTIFFS' REPRESENTATIVE ACTION COMPLAINT UNDER THE PRIVATE ATTORNEY GENERAL ACT ("PAGA")

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (IWC Wage Order is Invalid/Unenforceable)

26.     Plaintiffs' Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because the operative Industrial Welfare Commission Wage Order upon which Plaintiffs rely is invalid or unenforceable under applicable law.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Recovery Unconstitutional)

27.     Although Defendant denies that it has committed, or has responsibility for, any act that could support the recovery against Defendant in this Action, such recovery, if any, is barred because, to the extent any such act is found, such recovery against Defendant is unconstitutional under numerous provisions of the United States Constitution and the California Constitution, including the Excessive Fines Clause of the Eighth Amendment, the Due Process clauses of the Fifth Amendment and Section 1 of the Fourteenth Amendment, and other provisions of the United States Constitution, and the Excessive Fines Clause of Section 17 of Article I, the Due Process Clause of Section 7 of Article I, and other provisions of the California Constitution.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Frivolous Claims)

28.     Defendant has engaged attorneys to represent them in defense of Plaintiffs' frivolous, unfounded, and unreasonable Action, and Defendant is thereby entitled to an award of reasonable attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5 upon judgment in its favor.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (No Knowing or Intentional Failure to Provide Accurate Wage Statements)

29.     Plaintiffs' cause of action based upon wage statement violations is barred, in whole or in part, because, assuming *arguendo* that Plaintiffs and/or allegedly "aggrieved employees" were not provided with a proper itemized statement of wages and deductions, Plaintiffs and the allegedly "aggrieved employees" are not entitled to recover damages because Defendant's alleged failure to comply with California Labor Code section 226(a) was not a "knowing and intentional failure" under

8

California Labor Code section 226(e).

## THIRTIETH AFFIRMATIVE DEFENSE

### (Wage Statements--No injury)

30.     Plaintiffs' cause of action based upon wage statement violations is barred, in whole or in part, because, because, assuming *arguendo* that Plaintiffs and/or allegedly "aggrieved employees" were not provided with a proper itemized statement of wages and deductions, Plaintiffs and the allegedly "aggrieved employees" are not entitled to recover damages because they did not suffer any injury.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (No Attorneys' Fees Recoverable)

31.     Plaintiffs are not entitled to the recovery of attorneys' fees for any common law claims, or any statutory claims for which attorneys' fees are not specifically provided.

## RESERVATION OF DEFENSES

32.     Defendant alleges that Plaintiffs' Complaint does not describe the claims or facts being alleged with sufficient particularity to permit Defendant to ascertain what other defenses may exist. Defendant will rely on any and all further defenses that become available or appear during discovery in this Action and specifically reserve the right to amend this Answer for purposes of asserting such additional affirmative defenses.

///

///

///

///

///

///

///

///

///

///

///

9

DEFENDANT'S ANSWER TO PLAINTIFFS' REPRESENTATIVE ACTION COMPLAINT UNDER
THE PRIVATE ATTORNEY GENERAL ACT ("PAGA")

1   WHEREFORE, Defendant prays for judgment as follows:

2   1.   That Plaintiffs and the allegedly "aggrieved employees" take nothing by the Complaint;

3   2.   That the Complaint be dismissed in its entirety with prejudice;

4   3.   That Plaintiffs and allegedly "aggrieved employees" be denied each and every demand

5   and prayer for relief contained in the Complaint;

6   4.   For cost of suits incurred herein, including reasonable attorneys' fees; and

7   5.   For such other and further relief as the Court deems just and equitable.

8

9

10   DATED:  September 23, 2020                    JACKSON LEWIS P.C.

11

12

13   By: _____
                                        Jason R. Dawson
14                                      John P. Nordlund
                                        Melissa D. Owens
15                                      Attorneys for Defendant
                                        OMNI HOTELS MANAGEMENT
16                                      CORPORATION

17   4853-1387-7191, v. 1

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S ANSWER TO PLAINTIFFS' REPRESENTATIVE ACTION COMPLAINT UNDER
THE PRIVATE ATTORNEY GENERAL ACT ("PAGA")

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN DIEGO | COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):          Telephone No.<br>Jason R. Dawson (SBN 208906)           Tel:  619.573.4900<br>John P. Nordlund (SBN 286153)           Fax:  619.573.4901<br>Melissa D. Owens (SBN 327295)<br>JACKSON LEWIS P.C.<br>225 Broadway, Suite 2000<br>San Diego, California  92101 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**09/23/2020** at 08:20:00 PM<br>Clerk of the Superior Court<br>By Cecile Van Pelt,Deputy Clerk |
| SHORT CASE TITLE<br>*Martinez, et al. v. Omni Hotel Management Corporation*          **IMAGED FILE** | JUDGE:   Hon. Joel R. Wohlfeil<br>DEPT.:    C-73 |
| ATTORNEYS FOR DEFENDANT<br>OMNI HOTELS MANAGEMENT CORPORATION | Case No.:<br>37-2020-00022617-CU-OE-CTL |

# PROOF OF SERVICE

I, the undersigned, am over 18 years of age, employed in the County of San Diego, California, in which the within-mentioned service occurred; and that I am not a party to the subject cause of action. My business address is 225 Broadway, Suite 2000, San Diego, California 92101. On September 23, 2020, I served the following documents:

**DEFENDANT'S ANSWER TO PLAINTIFFS' REPRESENTATIVE ACTION COMPLAINT UNDER THE PRIVATE ATTORNEY GENERAL ACT ("PAGA")**

<u>***Counsel for Plaintiff***</u>
Justin Hewgill
Efaon Cobb
Hewgill Cobb & Lockard, APC
1620 Fifth Avenue, Suite 325
San Diego, CA  92101
Tel:          619-432-2520
Fax:         619-377-6026
Email:      justin@hcl-lawfirm.com
               efaon@hcl-lawfirm.com

☒    **BY ELECTRONIC SERVICE IN LIEU OF SERVICE BY MAIL, EXPRESS MAIL, OVERNIGHT DELIVERY, OR FACSIMILE TRANSMISSION.** In accordance with California Code of Civil Procedure section 1010.6 in compliance with the Judicial Council's Appendix I, Emergency Rules Related to COVID-19, Emergency Rule 12, I caused the document(s) to be sent to the persons above at the e-mail address(es) listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 23, 2020          _____
                                                         Grace Martin Welter

# EXHIBIT D

**COLLECTIVE BARGAINING AGREEMENT**

**BETWEEN**

**OMNI LA COSTA RESORT & SPA**

**AND**

**UNITE HERE LOCAL 30, AFL-CIO**


**2017-2019**

## AGREEMENT

This Agreement, made and entered into effective January 1, 2017, (unless indicated otherwise) by and between Omni Hotels Management Corporation d/b/a Omni La Costa Resort & Spa, hereinafter designated as the "Employer" or "La Costa," and UNITE HERE Local 30, AFL-CIO, hereinafter designated as the "Union," shall be effective to and including December 31, 2019.

## Section 1      PURPOSE

It is the intent and purpose of the parties hereto that this Agreement shall promote and improve the industrial and economic relationships between the Employer and the Union. Set forth herein are rates of pay, hours of work, and other conditions of employment to be observed between the parties hereto.

It is recognized by both parties that they have a mutual interest and obligation in maintaining friendly cooperation between the Employer and the Union.

## Section 2      UNION RECOGNITION, PROBATIONARY EMPLOYEES

(a)      The Employer recognizes the Union as the sole collective bargaining agent for all employees now or hereafter employed by the Employer in the positions listed in the schedule attached hereto as Schedule "A" and incorporated herein by reference (hereinafter referred to as "employees") for the purpose of collective bargaining with respect to minimum rates of pay, hours of work and other conditions of employment. This Agreement shall not apply to any supervisors or security personnel as defined by the National Labor Relations Act, as amended, nor to those persons employed in the Employer's spa facilities, retail shops (except employees regularly assigned only to the food and beverage area of the Marketplace), or central/administrative offices, or two (2) assistant executive sous chefs.

(b)      Every employee shall be subject to a probationary period during his/her first sixty (60) working days of employment or re-employment. The Employer may discipline, transfer, layoff, or discharge any employee during the probationary period and neither the employee nor the Union may challenge or grieve the Employer's action. When an employee has completed his/her probationary period, the employee shall receive full seniority credit from date of last hire.

## Section 3      UNION SECURITY

(a)      Employees shall make application for membership in the Union or tender appropriate fees to the Union on the thirty first (31st) day following the date of employment. The terms, conditions and qualifications of Union membership shall not be more burdensome than those in effect at such times to other applicants of the Union. The Employer shall report to the

Union the names of all new employees subject to this Agreement, their job classification, social security number, and date of hire.

(b)     On the thirty-first (31st) day of employment or thirty-one (31) days after the effective or execution date of this Agreement, whichever comes later, all employees covered hereby shall be or become, and continuously remain, members in good standing of the Union or shall tender the initiation fee and the appropriate monthly dues to the Union. For the purpose of this Agreement, membership in good standing shall mean the payment of the initiation fee and regular monthly dues. In order to simplify the Employer's and the Union's administration of this Section, the Employer shall upon the hiring of new employees give each employee an application for membership in the Union and a dues check off authorization.

(c)     Employees who do not comply with the provisions of this Section 3 shall be discharged by the Employer upon the written request of the Union, provided, however, that the Employer shall be under no obligation to discharge such employee unless and until the Union provides the Employer with proof that such employee has been duly notified in writing by the Union of his failure to pay or tender the initiation fee and/or regular monthly dues or pro-rata share of dues and of intent to seek and obtain his discharge unless such payment is made.

(d)     Subject to the foregoing, the Employer shall have the total freedom of selectivity in hiring, provided, however, that the Employer shall not unlawfully discriminate in hire or discharge.

(e)     The Union shall maintain for the Employer a dispatching office with open and non-discriminatory employment lists to fill Employer requisitions with qualified and competent personnel. The Employer shall, when possible, mail each week to the Union a new and updated list of all job openings for bargaining unit employees. The Employer may also procure personnel from any other source. Whenever the Employer hires an employee, it will at once inform the employee of the terms and provisions of this Agreement and of the obligations of the employee thereunder and will also, in writing, notify the Union of such employment within seven (7) days, giving the name, address, and social security number of the employee, the date of employment, and the job classification under which such employee is employed. All reports emailed to the Union shall be sent by secure email. Upon failure of the Employer to supply information of hiring to the Union, notwithstanding the provisions of Section 3, hereof, the Union shall at anytime after forty-eight (48) hour written notice to the Employer be allowed to take such action as it deems appropriate, including economic action, to enforce the provisions of this Section.

(f)     Union initiation and/or reinstatement fees and regular monthly dues and/or pro-rata share of dues payments shall be made by authorized payroll deduction check-off method. The Employer shall remit collected fees and dues to the Union no later than the tenth (10th) of each month following the month for which wages have been earned. The Employer shall deduct the

2

monies so authorized from the first or second paycheck issued following the Employer's receipt of such authorization from the Union.

(g)     Any employee working forty-two (42) or less hours per month is considered a pro-rata share employee. Pro-rata shares will be determined by the Union with a maximum amount equivalent to the corresponding regular monthly dues rate. Any employee working more than forty-two (42) hours per month for a consecutive three (3)-month period is considered a full dues paying member and is required to pay the initiation fee.

(h)     Seasonal employees shall be those employees hired for the summer season who do not remain in the employ of the Employer beyond the season. The summer season shall be defined as the time from approximately May 15th to September 15th. Seasonal employees shall be subject to the requirements of subsection 3(a) and shall be reclassified by the Employer as regular employees if they are employed beyond the season in which they are hired. Seasonal employees shall not be required to pay Union initiation fees unless they become a regular employee. The Employer shall notify the Union when an employee has been hired and designated as a seasonal Employee during the above periods.

(i)     Voluntary Political Check Off. The Employer agrees to honor voluntary political deduction authorizations from employees, in the following form:

> I hereby authorize the Employer to deduct from my pay the sum of $_____ per month and to forward that amount to the UNITE HERE TIP Campaign Committee. This authorization is signed voluntarily and with the understanding that the UNITE HERE TIP Campaign Committee will use this deduction to make political contributions and expenditures in connection with federal elections. I am aware that this deduction is completely and entirely voluntary and can refuse or revoke this deduction without reprisal. This authorization may be revoked by mailing notices of revocation to the Treasurer, UNITE HERE TIP Campaign Committee, at 275 Seventh Ave. New York, N.Y.10001 and to the employer.

The political contribution deduction shall be made once each month during which an employee who has performed compensated service has in effect a voluntary executed political contribution authorization. The deduction shall be remitted within thirty (30) days after the last day of the month in which the deduction was made to the UNITE HERE TIP Campaign Committee, at 275 Seventh Ave. New York, N.Y. 10001, accompanied by a form stating the name and social security number of each employee for whom a deduction has been made, and the amount deducted.

## <u>Section 4</u>        <u>VISITATION</u>

Properly authorized representatives of the Union shall be permitted to investigate the standing of all employees, and to investigate working conditions, and to see that the Employer is

complying with the terms of the Agreement; provided, however, they must speak to either a Human Resources Representative, the General Manager, or the Manager on Duty prior to visiting the Employer's facilities to notify him/her that the Union representative(s) will be coming on property. Said representatives shall be permitted to conduct such investigations in the following areas: employee cafeteria, housekeeping break area, landscaping break area, and human resources office, provided, however, that no investigation shall interrupt any meeting or the duties of any employee. In the event a Union representative desires access to another area of the Employer's facilities as part of a legitimate investigation under this section, the Union representative shall request permission from the Director of Human Resources, the General Manager, or the Manager on Duty. The Employer shall not unreasonably withhold permission for Union access, provided, however, that no investigation shall interrupt any meeting, the duties of an employee, or any guest's enjoyment of the Hotel and its facilities.

### Section 5        MANAGEMENT RIGHTS

(a)     It is agreed that the Employer possesses all of the rights, powers, privileges, and authority it had prior to the execution of this Agreement and nothing in this Agreement shall be construed to limit the Employer in any way in the exercise of the regular and customary functions of management and the operation of its business, except as may be specifically relinquished or modified herein by an express provision of this Agreement. By way of illustration, and not limitation, La Costa retains the sole right:

(i)     To direct the work force to determine the policies and methods of its business, except as expressly limited by the specific provisions of this Agreement.

(ii)    To decide the number and type of equipment, materials, products, and supplies to be used or operated.

(iii)   To determine the extent to which La Costa and its various departments/rooms/services shall be operated, expanded, reduced, shut down, discontinued, merged, liquidated, or relocated.

(iv)    To decide the amount of supervision and direction of the work force.

(v)     To be the sole and final judge of the qualifications of all applicants with the absolute right to select and determine the employees it will hire.

(vi)    To determine staffing levels for a department/room, and to expand, reduce, alter, combine, transfer, assign or cease any job.

(vii)   To establish or revise work schedules.

4

(viii)   To introduce new, different, or improved methods and procedures in its operations, and to otherwise generally manage the business.

(ix)   In addition to the circumstances set forth in section 12(c), the Employer may utilize temporary employees to perform short-term assignments or to fill vacancies in the bargaining unit until such time as regular employees are hired.

(b)   La Costa further retains the right to suspend, promote, transfer, discipline, lay off, and discharge employees, provided that, in exercising these rights, it will not discipline, suspend, or discharge employees without just cause, subject to the applicable provisions of this Agreement.

(c)   La Costa may assign and interutilize Golf Department employees to perform out of classification work as needed and may utilize non-union employees or "temporary help" if short staffed, or during special events required by tournament operations. If a service charge is generated, all persons working the event shall receive their proportionate share of the service charge based upon event hours worked. There is no guarantee that Golf Department employees will work special events; however, if La Costa employees are to be utilized, first opportunity will go to Golf Department employees. La Costa may utilize temporary help in order to avoid overtime payments. Absent a specific provision to the contrary, La Costa may continue to operate its Golf Department within its discretion in the same manner as it did prior to July 1, 1999.

(d)   La Costa, by not exercising any function hereby reserved to it, or exercising any such function in a particular way, shall be deemed a waiver of the right to exercise such function or preclude it from exercising the same in some other way not in conflict with the express provisions of this Agreement. This does not preclude the Union from raising the defense of disparate treatment in discipline or discharge cases.

## Section 6        DISCIPLINE

(a)   The Employer has the right to implement, revise, post, and enforce work rules and rules of conduct, as well possible disciplinary actions for violations thereof. Before any new rules are posted or issued, the Union shall receive a copy and have ten (10) calendar days to object in writing to the reasonableness of same. If no such objection is received by the Employer, the rules and possible disciplinary actions for violations thereof as proposed shall be deemed reasonable and enforceable. All such timely objections shall be resolved solely by the grievance procedure contained herein.

(b)   A warning notice shall not remain in effect for a period of more than one (1) year from date of said warning. Warning notices to be considered valid shall be issued within fourteen (14) calendar days of actual knowledge by management at a department head level or higher,

5

unless the Employer and the Union agree in writing to extend the time limit due to extenuating circumstances. A copy of the warning notice shall be sent to the Union.

(c)     Work stations will not be changed by the Employer for disciplinary reasons unrelated to performance.

(d)     The Employer and the Union both recognize the importance of a drug/alcohol free work environment. The parties also recognize that any employee who has a problem with drugs/alcohol should voluntarily seek immediate treatment. Accordingly, any employee who voluntarily reports such a problem to the Employer and requests a reasonable accommodation in order to enter drug/alcohol abuse rehabilitation, prior to being requested to take a drug/alcohol test and prior to being involved in an incident that might not have occurred absent the employee's use of drugs/alcohol, shall be entitled to a reasonable accommodation, provided it does not impose an undue hardship on the Employer.

(e)     The Union agrees that the Employer may require drug/alcohol testing of employees if a reasonable basis exists for suspecting that an employee is impaired in any way or has engaged in the use of unauthorized or illegal drugs while on the job or on Hotel property or where the employee has been involved in an accident. In furtherance of this policy, as well as where the Employer has a reasonable basis for suspecting that an employee has engaged in the unauthorized removal or possession of hotel or guest property, the Employer may require employees to cooperate with a search by opening his/her locker, emptying pockets, and opening any purse, briefcase, bag, or other carrying case. Such inspection shall be conducted in the presence of a Union Steward or two bargaining unit witnesses. The Employer may discharge an employee for any single instance of the following: consuming an alcoholic beverage during working hours, unauthorized possession on the job of an alcoholic beverage, possession of an illegal drug or use of an illegal drug, reporting to work under the influence of alcohol or illegal drugs, failing to pass a drug/alcohol test (pursuant to Schedule B), or refusing to submit immediately to a drug/alcohol test or search upon a request of management, where there is a reasonable basis for same.

## Section 7     WAGES

(a)     The wage scales set forth in Schedule A attached hereto are minimum wages to be paid to employees working in these classifications. Nothing in this Agreement shall be construed to prevent increases at the Employer's discretion in individual rates or classifications over and above the minimum specified.

(b)     Employees shall receive eighty percent (80%) of their classification rate set forth in Schedule A in effect at the time of their hire for their first six (6) months of employment. After completion of their first six (6) months of employment, employees shall receive ninety percent (90%) of their classification rate set forth in Schedule A in effect at the time of completing their first six (6) months of employment for the next six (6) months of employment. After completion

6

of twelve (12) months of employment, employees shall receive one hundred percent (100%) of their classification rate set forth in Schedule A.

(c)     There shall be no deduction from the wages of an employee other than deductions which are authorized by this Agreement, authorized by the employee or are authorized by law.

(d)     All combination work shall be paid at the highest scale of wages established for any class of work performed. In the event there is a permanent merger of classifications or positions that create a substantial increase in work load, the Employer will meet with the Union to discuss an appropriate wage.

(e)     Employees working shifts beginning between 8:00 p.m. and 2:00 a.m. shall receive one dollar ($1.00) per hour over the Schedule A rate, except for classifications which are specifically overnight (e.g., night auditor).

(f)     An engineer that obtains and maintains a special certification (e.g., pool operator or section 608 technician) at the written request of the Employer, and provides the Employer with a copy of such certification, shall receive a premium of fifty cents ($0.50) per hour over his/her Schedule A rate for all hours worked.

## Section 8     WORK SCHEDULES AND OVERTIME

(a)     This section is intended to indicate the normal number of hours of work and the circumstances in which overtime compensation shall be paid. Schedules and actual hours worked are based on business requirements. This section shall not be construed as a guarantee of minimum or maximum hours of work per day or per week, of the number of days per week, days off, or of working schedules.

(b)     The workweek shall begin at 12:01 a.m. Saturday and end at 12:00 midnight the following Friday evening, a period of one hundred sixty eight (168) consecutive hours.

(c)     Full-time employees shall normally be scheduled each workweek for five (5) shifts of eight (8) within eight-and-one-half (8-½) consecutive hours, with an unpaid one-half (½) hour meal period near the middle of each shift. Where an employee works a shift of more than ten (10) hours a second unpaid meal period of thirty (30) minutes will be scheduled, unless the employee agrees in writing to waive the second meal period. Employees shall receive two (2) regular days off each week, except in an emergency or a rescheduling pursuant to subsection 8(i). Upon a reasonable request made in advance, an employee may review a report of his/her timeclock entries.

(d)     In the housekeeping department, except for turndown attendants, the Employer shall not schedule full-time employees for shifts shorter than eight (8) hours. However, the lowest ten (10%) by seniority of the scheduled employees may be scheduled for a shift shorter than eight

7

(8) hours but no less than four (4) hours, except in cases of emergency or unexpected business fluctuations.

(e)   In the stewarding department, the Employer shall not schedule full-time employees for shifts shorter than eight (8) hours. However, the lowest twenty (20%) by seniority of the scheduled employees may be scheduled for a shift shorter than eight (8) hours but no less than four (4) hours, except in cases of emergency or unexpected business fluctuations.

(f)   All employees are required and responsible for taking one ten (10) minute paid rest period near the middle of each four (4)-hour period of time worked. An employee shall obtain authorization from his/her supervisor before taking a rest period away from the employee's work area. Rest periods shall not be taken at a time that would interfere with the Employer's operations.

(g)   No employee shall be required to work succeeding regular or split shifts without at least an eight (8) hour rest period in between. However, on a voluntary basis, employees may agree in writing on a form provided by the Employer to waive the eight (8) hour rest period. Said waiver may be revoked in writing by employee at any time with at least twenty-four (24) hours' notice to Employer.

(h)   Normally by 5:00 p.m. on Thursday preceding commencement of the workweek, the Employer shall post in a conspicuous place, a work schedule, in ink, specifying the days of work, the days off, and the shift starting times and stopping times (except banquet employees) for each employee within the payroll week. An employee's day off or type of shift shall not be changed without at least a forty-eight (48) hours prior notice to the affected employee, except in cases of emergency or unexpected business fluctuations. Upon posting each weekly schedule, the manager shall email copies of the schedule to all employees that have made a prior request.

(i)   Employees shall be paid overtime of one and one-half (1-½) times the employee's hourly rate for work:

     (i)   Over eight (8) hours in a workday;

     (ii)   Over forty (40) hours in the workweek; and

     (iii)   On any consecutive days beyond five (5), regardless of the workweek, until the employee receives a day off, except:

          1)   Employees may be required to work no more than ten (10) consecutive days not more than four (4) times per year when special events occur, provided the Employer complies with state law. The Employer shall provide employees fourteen (14) day bulletin board notice of new special events under this paragraph.

          2)   Tipped employees may voluntarily waive payment of overtime under this subsection 8(j)(iii) by signing a "consecutive day overtime waiver" ("CDOW") form, which shall be non-revocable for six (6) months, but renewable every six (6) months. Non-tipped

employees may voluntarily waive payment of overtime under this subsection 8(j)(iii) by signing a CDOW form, which shall be non-revocable for thirty (30) days. The Employer may advise employees of the provisions of this subsection 8(j)(iii)(3), and CDOW forms shall be available in human resources, but may not request employees to sign a waiver.

Employees shall be paid straight-time and overtime based on actual time worked without rounding. Overtime will not be pyramided with any other premium rate.

## Section 9     WAGE PAYMENT

(a)     All wages of employees shall be paid bi-weekly. Wages shall be paid by direct deposit or payroll (debit) card, consistent with California law. If an employee does not sign up for direct deposit, he/she shall receive a payroll (debit) card that includes one free transaction each pay period.

(b)     An accounting of social security, disability insurance and all other deductions from the wages of employees shall be given to the employee with each paystub issued, as required by law. Discharged employees shall be paid at the time their last shift is completed, except as provided for in the following paragraph, or be paid an additional shift's wage for each day they are made to wait for their pay. If, however, the Employer suspends an employee to investigate the facts surrounding the cause to terminate and said investigation gives the Employer sufficient reason to terminate the affected employee, the Employer may then have the right to call in the terminated employee to receive his/her termination pay.

(c)     Whenever an employee is discharged, he shall be paid at the time his shift is completed. Employees who are discharged or suspended must be notified at the end of their shifts. The Union shall not be held to notify any members of discharge; that shall be done by the Employer. If this is not done and they report for work at the beginning of the next shift and they are not placed to work, they shall receive compensation for their scheduled shift for so reporting.

## Section 10     UNIFORMS AND JACKETS

(a)     The Employer shall furnish and launder uniforms for all bargaining unit employees as applicable, without cost to such employees. This section shall be applicable only if the Employer requires a uniform or jacket unique and peculiar to the establishment and not usable as a garment in any way elsewhere.

(b)     The Employer shall make available a minimum of three (3) uniforms per employee so that all employees will have clean and properly fitting uniforms in good condition at all times.

9

(c)     The Employer shall supply sweaters for all housekeeping employees when required due to weather conditions.

(d)     The Employer will provide rain jackets/garment for employees assigned to work outside during times of rain. This will be issued by a sign in/out system.

(e)     All employees shall be permitted to wear one official Union button while on duty; provided, however, that the Union button shall not exceed one-and-one-quarter inches (1-1/4") in diameter and shall be worn beneath the employee's nametag. Employees may not supplement or alter their uniform in any other manner.

## Section 11     CASH GRATUITIES AND SERVICE CHARGE

All additions and changes to this section 11 from the previous agreement which expired on December 31, 2016 shall become effective upon ratification of this Agreement:

(a)     The Employer retains the right to determine service charges in its sole prerogative. In the event that the Employer eliminates the service charge, the Employer shall meet with the Union, upon request, in order to discuss the impact of such determination upon the employees affected.

(b)     Cash gratuities are the property of employees and are not a part of the basic wage established by this Agreement. All charged tips shall be included on each employee's paycheck.

(c)     In VUE, an automatic gratuity of eighteen percent (18%) shall be added to the check for all groups of six (6) or more, unless the guest chooses to opt out of the automatic gratuity. In the Spa Café, absent a prior alternative arrangement, an automatic gratuity of eighteen percent (18%) shall be added to the check for lunch and dinner groups of six (6) or more, unless the guest chooses to opt out of the automatic gratuity. Taking into consideration the large parties that request to be seated in a specific area of the outlet and/or to be served by a specific server, managers and employees that are responsible for seating guests shall endeavor to rotate the seating of large parties in an equitable fashion.

(d)     The Employer shall continue its practice of compensating servers with an eighteen percent (18%) service charge for service of food and beverage pursuant to a restaurant event order.

(e)     Outlet guest checks shall include the dollar amounts of suggested gratuities of 18%, 20%, and 22%. It will be left to the guest's discretion to determine how much to tip.

(f)     Outlet checks charged to the Employer's A&G account shall include a service charge of no less than fifteen percent (15%) of the retail price.

10

(g)     In the event the Employer increases the delivery charge or other flat rate in room service, the Employer shall give ten (10) day notice to the Union. The Employer will meet with the Union to discuss the impact of such increase upon the employees affected.

(h)     The Employer will recommend a porterage fee of $6.00 each way (checking in and out) per person to be paid to the bellpersons/valet attendants. The sales department may not negotiate porterage below $4.00 each way without the written permission of the Managing Director or General Manager. Additionally, the Employer will recommend a fifty (50%) increase in the porterage fee for dead moves, i.e., from one room to another at the request of the guest or the group when the guest is not present.

(i)     The Employer shall pay the bellpersons/valet attendants a fee of seventy-five cents ($0.75) for each vehicle that is valet parked overnight. Such fees shall be pooled and paid to bellpersons/valet attendants based on the number of hours worked.

(j)     The Employer shall recommend to groups the following delivery fees to be paid to bellpersons/valet attendant (or room service servers when utilized):

| | |
|---|---|
| Under the door | $1.50 |
| Inside the room | $5.00 |

However, in no event shall the Employer negotiate less than the following amounts for such contracted group deliveries:

| | |
|---|---|
| Under the door | $1.50 |
| Inside the room | $4.00 |

(k)     All gratuities left by a group staying at La Costa intended for distribution to housekeeping employees, will be posted and distributed to housekeeping employees within sixty (60) days of the receipt of those gratuities by La Costa (whether the receipt is upon checkout or at a subsequent date).

(*l*)     Room service servers, leads, and bussers shall be compensated through the Employer's payroll system with a mandatory service charge totaling nineteen percent (19%) of the price of all food and beverage delivered. The service charge shall be pooled and distributed to employees based on hours worked as follows:

- Sixteen and one-half percent (16.5%) to room service servers;
- One and one-half percent (1.5%) to room service leads; and
- One percent (1%) to bussers.

When a lead or a busser is not working, their portion of the service charge shall be distributed to the servers.

Room service servers shall retain any additional cash or charged gratuities added by the guests they personally serve. Charged gratuities shall be included on the server's paycheck.

11

(m)     For delivery of Omni Select Guest amenities, the Employer shall pay a fee of $1.75 per room, which shall be pooled and distributed to room service employees in the same manner as other service charges, based on the number of hours worked.

(n)     For non-revenue food and beverage amenities, the Employer shall pay the room service server per delivery:

Value of $10.00 or less                    $2.25
Value of more than $10.00              $4.00

Such fees shall be pooled and distributed to room service employees in the same manner as other service charges, based on the number of hours worked.

(o)     The Employer will pay a golf tournament fee of $7.50 per player for all tournaments in which the Employer is collecting a greens fee. The tournament fee shall be pooled and distributed through the Employer's payroll system based on hours worked during such tournaments as follows: twenty-five percent (25%) to the tournament coordinator, twenty-five percent (25%) to the assistant golf professionals, and fifty percent (50%) to the remaining outside golf staff in the bargaining unit, including the bagroom staff.

(p)     The Employer shall pay to assistant golf professionals a commission of two percent (2%) of all pro shop sales after achieving the Employer's monthly sales and performance goals, as determined in the Employer's sole judgment. The Employer shall post such goals in advance, and no adjustment or change to any goal shall be retroactive. The foregoing commissions shall be pooled and distributed through the Employer's payroll system based on hours worked during the month in which the commission was earned.

(q)     The Employer shall send to the Union a copy of any new or modified reservations incentives and goals in advance of posting or announcing them. No adjustment or change to any incentive or goal shall be retroactive. Upon request, the Employer shall meet and negotiate such changes with the Union, including giving serious consideration to any employee proposals or concerns.

## Section 12     BANQUETS

(a)     Banquet employees shall be compensated with a service charge of fifteen and three-tenths percent (15.3%) of all banquet food and beverage sales in which a service charge is received, as follows:

(i)     fourteen and one-tenth percent (14.1%) shall be pooled each payroll period and distributed evenly to all banquet captains, banquet servers, and bartenders based on hours worked on events in which a service charge is received; and

(ii)    one and one-fifth percent (1.2%) shall be pooled each payroll period and distributed evenly to all banquet housepersons and banquet set-up captains based on hours worked on events in which a service charge is received.

(b)    The Employer may, in its reasonable discretion, assign servers and/or captains depending on the importance of the group, high dollar tickets, special service requirements, or guest requests.

(c)    The Employer may utilize the service of employees from temporary agencies in the event it has exhausted its list of available employees in the needed classification. The Employer shall be credited with the temporary employees' portion of the service charge pool, not to exceed a total credit of twenty-five dollars ($25.00) per hour. For example, if the value of the pool in a certain payroll period is thirty dollars ($30.00) per hour, and the base hourly rate of a server is eight dollars ($8.00) per hour, the Employer would be credited from the pool with seventeen dollars ($17.00) for each hour worked by temporary employees. If the value of the pool in another payroll period is twenty dollars ($20.00) per hour, and the base hourly rate of a server is eight dollars ($8.00) per hour, the Employer would be credited from the pool with twelve dollars ($12.00) for each hour worked by temporary employees. The Employer will be responsible for maintaining detailed records of how the payment of wages is remitted to temporary agencies.

(d)    Notwithstanding any provisions of this Agreement to the contrary, the Employer shall pay a service charge equal to twelve and one-half percent (12.5%) of the retail price of all banquet food and beverages served at in-house and complimentary functions. Six and nine-tenths percent (6.9%) of the service charges for in-house and complimentary functions shall be placed in the pool for banquet housepersons and banquet-setup captains and distributed evenly based on hours worked. The remaining ninety-three and one-tenth percent (93.1%) of these service charges shall be placed in the pool for banquet captains, banquet servers, and bartenders and distributed evenly based on hours worked.

(e)    The Employer shall maintain for at least one (1) year following each event the records of all banquets, including all gratuities, fees, and/or service charges received or distributed and banquet checks. Upon request from the Union, including a Shop Steward, the Employer shall supply a written report to the Union showing the amount of gratuities, fees, and service charges provided by a banquet customer, the total gratuities, fees, and service charges during each payroll period, the hours worked by each banquet employee, and the amount of service charge paid to each employee. The Union may request that such information be posted in the banquet department. Banquet gratuities, fees, and service charges shall be included in the paycheck of a banquet employee.

(f)    If the Employer receives a carver station fee from the guest, it will be included in the pool for banquet captains, banquet servers, and bartenders.

13

(g)      Banquet servers, bartenders, and banquet captains working holiday buffets will receive a service charge of sixteen and three-quarters percent (16.75%), which shall be pooled and distributed evenly based on hours worked on those events, except that the captains' fifty percent (50%) premium share shall come from the pool. Banquet housepersons and banquet set-up captains working holiday buffets will receive a service charge of one and one-quarter percent (1.25%), which shall be pooled and distributed evenly based on hours worked on those events, except that the banquet set-up captains' fifty percent (50%) premium share shall come from the pool. Servers will be permitted to present the check to the guest.

(h)      When the Employer directs banquet housepersons to move boxes for groups between the loading dock and a meeting room or other locations, a fee of $1.00 per box which shall be pooled separately and distributed based on hours worked for banquet housepersons and banquet set-up captains.

(i)      The banquet department will utilize seniority in the following manner with regards to each classification of banquet employee. The Employer may utilize full-time, part-time, and on call lists.

(i)      Full-time lists will consist of employees in each classification (banquet captain, banquet server, bartender, banquet set-up captain, and banquet houseperson) who are available to work all shifts for five (5) days of the week.

(ii)     Part-time lists will consist of employees in each classification who have slightly restricted schedules.

(iii)    On call lists will consist of employees in each classification who have very restricted schedules.

Employees will be scheduled by their seniority on each list, with full-time and part-time having separate seniority. On-call banquet employees shall have seniority rights only for purposes of the order in which they are called to work upcoming events, provided, however, that an on-call employee shall be deemed to have voluntarily resigned if he/she has been offered shifts but has not worked in a three (3) month period (except any approved leave of absence) and the Employer notifies the employee of this provision prior to the end of the three (3) month period. Full-time shall be scheduled first, part-time second, and on call third. The Employer shall follow the banquet staffing guidelines provided to the Union on February 19, 2004.

## Section 13      REPORTING AND MEETING PAY

(a)      When the Employer or its representative orders an employee to report to work, or fails to notify a regularly scheduled employee not to report to work for any reason at the completion

of the employee's last regular shift worked and said employee is not allowed to work, the Employer shall pay the employee a minimum of four (4) hours wages.

(b)     It is agreed that the foregoing provision of this Section shall not apply when work becomes unavailable due to fire, strikes, acts of God, or any condition beyond the control of the Employer or when the employee reporting for work appears under the influence of liquor, drugs or is unable to perform his regular duties. Pursuant to this provision, "emergency" includes inclement weather or other conditions that require a rescheduling of Golf Department employees.

(c)     The Employer shall endeavor to schedule department and resort meetings contiguous with each employee's shift, during which employees shall be paid their straight-time hourly rate of pay for their time in attending, unless overtime is required by California law. The Employer may require employees to attend quarterly mandatory meetings that are not contiguous with an employee's shift, provided the employee receives a minimum of two (2) hours pay at one-and one-half times (1.5x) their hourly rate.

## Section 14     NEW CLASSIFICATIONS

Should any classification not listed in this Agreement be established by the Employer during the term of this Agreement which falls within the jurisdiction of the Union, the parties hereto agree that upon thirty (30) days written notice, they will negotiate a mutually agreeable wage rate for such classification. If agreement cannot be reached the Employer may establish the wage rate.

## Section 15     SICK/PERSONAL LEAVE

(a)     Employees shall accrue one (1) hour of sick/personal leave with pay for every 30 hours worked. An employee may accrue a maximum of 48 hours of sick/personal leave in an anniversary year. At no time shall an employee's sick/personal leave balance exceed 48 hours. The Employer shall include each employee's sick/personal leave balance on his/her paycheck stub.

(b)     On each employment anniversary, an employee may request in writing payout of any sick/personal leave in excess of 24 hours. Unused sick/personal leave shall not be paid out upon termination of employment. However, if an employee is rehired by the Employer within 12 months, the employee shall be entitled to use previously accrued but unused paid sick/personal leave and to accrue additional paid sick/personal leave up to a maximum of 48 hours.

(c)     In the first two years of employment, an employee may use up to 24 hours of accrued sick/personal leave. In the third and subsequent years, an employee may use up to 48 hours of accrued sick/personal leave. Paid sick/personal leave may be used in the following manner:

15

(i)     After completing 12 months of employment, as a paid personal day(s) off when requested at least ten (10) days in advance. Such personal day(s) are subject to approval by the Employer, which approval will not be unreasonably denied. If personal leave is denied based on business needs and the employee calls in sick for said day(s), paid sick/personal leave will not be granted unless the absence was permitted by the Healthy Workplaces, Health Families Act ("HWHFA").

(ii)    After 90 days of employment, as paid sick time for the following reasons permitted by HWHFA:

- In the event of absences resulting from the diagnosis, care, or treatment of an existing health condition of, or preventive care for, the employee or an employee's family member.

- In the event the employee or employee's family member is a victim of domestic violence, sexual assault, or stalking: to obtain legal relief, to seek medical attention, to obtain domestic violence or other crisis services, to obtain counselling, or to participate in safety planning or relocation.

When paid sick/personal leave is used for a foreseeable event permitted by HWHFA, the employee must provide reasonable advance notice to his or her manager or human resources. When used for an unforeseeable event permitted by HWHFA, the employee must provide notice to his/her manager or human resources as soon as practicable. An employee will not be required to find his/her replacement.

For any absence that is longer than three (3) consecutive work days, an employee must provide human resources with reasonable documentation to verify the leave was for a permissible purpose.

When paid sick/personal leave is used for events permitted by HWHFA, it may be taken in two (2) hour increments. Any sick/personal leave pay available to the employee shall be used to replace the scheduled hours missed whenever an absence is to be excused under the Employer's Attendance Policy.

(d)    Sick/personal leave shall be paid at the employee's Schedule A rate, except as otherwise required by HWHFA.

16

(e)      The Employer will not deny an employee the right to use paid sick/personal leave as permitted by HWHFA. The Employer will not discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for requesting or using sick leave, filing a complaint or alleging a violation of HWHFA, cooperating in an investigation or prosecution of an alleged violation of the HWHFA, or opposing any policy or practice or act that is prohibited by the HWHFA.

## Section 16      BEREAVEMENT LEAVE

Employees who have been on the payroll a minimum of one (1) year at the time of request are entitled to three (3) days paid leave per year in the event of the death of an immediate family member. Immediate family is limited to children, current spouse or life partner, parents, brothers, sisters and grandparents. Employer reserves the right to require written substantiation of the death and the relationship of the deceased to the employee. Funeral leave does not carry over from year to year.

## Section 17      EQUAL PAY FOR EQUAL WORK

All employees shall receive equal pay for the same or substantially similar work, regardless of gender, race, or ethnicity, as required by California law. References herein to the male gender are understood to refer to both the male and female.

## Section 18      PROHIBITION OF INDIVIDUAL CONTRACTS

The Employer shall not enter into any individual contract or agreement with an employee covered by this Agreement if such agreement varies any of the terms or conditions contained in this Agreement.

## Section 19      MEAL PROVISIONS

(a)      The Employer shall make available to employees one meal for each shift which is worked and for which no charge shall be made to the employee. Meals shall be served under clean, sanitary conditions and must be consumed on the premises in areas designated by La Costa. Meals shall be palatable, wholesome and nutritious.

(b)      Employees who voluntarily do not eat meals furnished by the Employer shall have no claim on the Employer for cash in lieu of meals.

17

(c)      Current cafeteria hours are:
Early bird food                6:00 a.m. to 9:00 a.m.
Lunch                          10:30 a.m. to 3:00 p.m.
Dinner                         4:30 p.m. to 10:00 p.m.
Graveyard Dinner               2:00 a.m. to 3:00 a.m.

(d)      Employees with cafeteria privileges who cannot take their meal period within the regular cafeteria hours or employees scheduled for third shift hours and entitled to a meal break shall be permitted to order from the available overnight meal menu, provided they have obtained written permission from their manager/supervisor on a "meal voucher" form.

## Section 20      VACATIONS

(a)      All full-time employees shall receive vacation pay as follows:
One (1) year's service—        40 hours or 1.538 hours per pay period;
Two (2) years' service—        80 hours or 3.077 hours per pay period;
Five (5) years' service—       120 hours or 4.615 hours per pay period;
Ten (10) years' service—       160 hours or 6.154 hours per pay period.

A full-time employee is defined as an employee who works and/or is paid for an average of at least thirty-two (32) hours per week. Vacation pay for part-time employees shall be pro-rated based on the employee's average workweek in the previous year. Notwithstanding the foregoing definition, every employee who was classified as full-time prior to March 1, 2010 shall remain full-time, provided he/she is available to work full-time.

(b)      Subject to scheduling availability, all employees shall have the right to one week (five consecutive calendar days) of vacation without pay each year.

(c)      Tipped employees shall receive vacation pay at the following rates:
Upon ratification:       $17.00
January 1, 2018          $18.00
January 1, 2019          $19.00.

(d)      Paid vacation time must be used within the first twelve (12) months immediately following the year it is earned. Employees are encouraged to use vacation time. In the event an employee does not use vacation time as it is earned, the employee may be able to accumulate up to one and one-half (1-½) times the employee's annual vacation accrual. Once an employee reaches this cap, the employee shall not earn additional vacation time until his/her balance is reduced below this cap.

(e)      Employees shall be paid vacation pay at the start of their vacation period unless otherwise specified on the employee's vacation request form.

18

(f)     The schedule of vacations shall be arranged by mutual agreement between the employee and the Employer subject to the requirements of the Employer's "season." Employees shall request vacation on the appropriate form provided by the Employer, which shall include space for the employee's first, second, and third choice of vacation time. Vacation time off shall be bid for the period of February 1 through July 31 on December 1st of the prior year, and for the period of August 1 through January 31 on June 1st, subject to the Employer in its sole discretion determining the number of associates who may utilize vacation time during any given week. The Employer shall post in writing the approved vacation requests from the bids by December 15th (for February 1 through July 31) and June 15th (for August 1 through January 31). In unusual circumstances the Employer may give approval to a vacation request prior to the vacation bid so that the employee may purchase tickets and make other arrangements. Vacations may be taken in increments of no less than a day. Once vacations have been approved, changes shall be made by mutual agreement only.

(g)     Any sick leave or leave of absence, granted by the Employer to an employee of fifteen (15) days or less shall not interrupt this continuity of service when computing vacation time and pay; this shall be considered as time worked by the employee. Any sick leave or leave of absence of more than fifteen (15) days shall be made up by the employee when computing vacation time and pay.

(h)     When employment is terminated by the Employer or an employee prior to an vacation period, the employee shall receive a pro-rated payment on his vacation pay if he has worked five (5) months or more, thereafter pro-rata according to regular scheduled work week.. Tipped employees shall be paid for unused vacation at their final hourly rate of pay upon termination of employment. However, terminating employees shall not receive payment for unused vacation time until they turn in all uniforms, keys, equipment, and other property of the Employer.

(i)     Employees achieving twenty (20) years of service shall receive a one-time check of one hundred fifty dollars ($150.00).

## Section 21     LOCKERS AND DRESSING ROOMS

The Employer shall furnish clean and sanitary dressing rooms and comply with all the sanitary and health regulations in the city, county and state.

## Section 22     SENIORITY

(a)     The Employer agrees to apply the principle of seniority from date of hire in matters of:

(i)     layoff and recall;

19

      (ii)     filling of vacancies;

      (iii)    prevailing sections established by the Employer for housekeeping and culinary employees, with each kitchen having separate seniority;

      (iv)    shift preferences and days off; and

      (v)     vacation scheduling.

Provided, however, in the opinion of the Employer that such application of seniority shall depend upon the ability of remaining employees in the culinary and engineering departments to perform the available work. Except for banquet classifications (subsection 12(i)), there shall be only one seniority list for each job classification.

      (b)    An employee who voluntarily transfers from his assigned position in a specified area or entity (e.g., VUE) to another specified area or entity (e.g., Bob's Steak & Chop House) or to another department or classification (e.g., banquet department) will be placed at the bottom of the seniority list in his new position.

      (c)    An employee who is involuntarily bumped from a particular area or entity due to closure or layoff may exercise his/her full accumulated classification seniority in any other area or entity in the same classification (or if there is no position in his same classification, to his previously held classification), provided the employee has the qualifications, skills, and ability to perform the available work. An employee whose bargaining unit lead position (e.g., captain, lead, etc.) is eliminated may exercise his/her full accumulated lead classification seniority in the classification over which he/she was a lead, provided the employee has the qualifications, skills, and ability to perform the available work. The parties agree to meet at the time of a closure or layoff to discuss the potential for combining other classifications (i.e., those requiring substantially similar qualifications, skills, and abilities) for purposes of layoff and recall seniority. Employees must exercise their bumping rights at the time of layoff.

      (d)    A voluntarily transferred or promoted employee shall have probationary status in the new job classification for the first forty-five (45) days worked or ninety (90) calendar days, whichever comes first. At any time during this probationary period, the Employer may return the employee to their former job classification or the employee may elect to return without loss of seniority in the employee's immediately preceding classification. During this probationary period only, if an employee returns to their old classification they shall have and be subject to the same bumping rights and limitations as provided for laid off employees.

      (e)    Housekeeping inspectors/inspectresses who have less than five (5) shifts per week shall be scheduled according to seniority as room attendants, provided the employee has the ability to perform the available work.

      (f)    The Employer maintains the right to reduce the work week and/or hours of work as needed on a seniority basis, subject to the provisions of subsection 22(a); however, the Employer's

application of this right shall be applied on a work area basis and the parties hereto shall first attempt to voluntarily accommodate the need for a work reduction.

(g)     Employees are permitted to bump another employee only as specifically permitted in this section 22.

(h)     <u>Loss of Seniority</u>. An employee shall lose his seniority for any of the following reasons.

     (i)     Voluntarily quitting, which includes failing to report for three (3) consecutive scheduled days.

     (ii)     Discharge for just cause.

     (iii)     Exceeding a written leave of absence unless said absence has been mutually extended.

     (iv)     Failure to report for work when scheduled without excuse following notice to report to work. In layoff cases of indefinite duration the employee shall receive at least one (1) week's notice prior to the scheduled reporting time.

     (v)     Layoff which exceeds nine (9) months duration. However, in the event a layoff is due to a property renovation, no affected employees shall lose seniority during the period of renovation.

     (vi)     In the event an employee fails to return from a scheduled leave of absence on time, or is absent from work without prior excuse, or fails to return from recall, within three (3) days of said event, unless the employee is prevented from being at work due to an event beyond his/her control.

     (vii)     An employee gives a false reason for obtaining a leave of absence.

Nothing contained herein shall preclude the Employer's right to terminate or discharge employees for just cause.

## <u>Section 23</u>     <u>HOLIDAYS</u>

(a)     The Employer recognizes the following days as holidays: Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, and New Year's Day.

(b)     <u>Holiday Pay.</u> Full-time non-probationary employees shall receive eight (8) hours of holiday pay plus their hourly rate for hours worked on one of the above holidays. Part-time,

21

extra, and on-call non-probationary employees who are required to work on any of the above holidays shall receive four (4) hours of holiday pay plus their hourly rate for hours worked on one of these holidays. If an employee is scheduled to work on a holiday and refuses or fails to appear for holiday work, he/she shall not receive holiday pay.

      (c)    <u>Non-Worked Holiday Pay.</u> Full-time employees who have been employed at least twenty-four (24) months and who do not work on the above holidays shall receive eight (8) hours of holiday pay. Part-time, extra, and on-call employees who (i) have been employed for twenty-four (24) months, (ii) work an average of at least fifty (50) hours a month, and (iii) do not work on a holiday, shall receive holiday pay based upon the average hours worked during the preceding two (2) pay periods. To receive this holiday pay, an employee must work his/her last regularly scheduled day before the holiday and the employee's next regularly scheduled day after the holiday, unless excused in writing by the Employer. Employees eligible for non-worked holiday pay will receive holiday pay in lieu of vacation pay on the day of any holiday which occurs during an employee's vacation.

      (d)    Schedules will not be changed to avoid the payment of holiday pay.

      (e)    Full time employees, after one (1) year of employment, shall be allowed to take their birthday off, without pay, subject to ten (10) day written notice and prior Employer approval, which will not be unreasonably withheld.

## Section 24      LEAVE OF ABSENCE

The Employer may grant an employee a leave of absence for any reason in the Employer's sole discretion, except that all applicable provisions of the Family and Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA") shall in all cases be complied with. All employees with a minimum of one (1) year of service are permitted to extend a leave of absence with no loss of seniority for the employee's own serious medical condition for a total of up to twelve (12) months in any twenty-four (24) month period. However, an employee that is eligible for FMLA/CFRA leave shall not be entitled to continued medical insurance beyond the time period required by the FMLA/CFRA.

## Section 25      UNION LEAVES OF ABSENCE

The Employer shall permit full leaves of absence with no more than one (1) employee from a department at a time, provided, within reason, it does not interfere with the efficient operation of the Hotel. The Employer and the Union may mutually agree on alternative arrangements, including the number of employees and timing of Union leaves of absence. The employee shall continue to accrue seniority if the leave is for twelve (12) months or less. Where such a leave continues for more than twelve (12) months, the employee's seniority shall be frozen during the entire leave period. Regardless of the length of leave, no employee shall accrue or be entitled to any benefits

22

while on leave. Upon completion of service at the Union, the employee shall be returned to his/her former position at the appropriate rate of pay for that position, provided the employee's position still exists and the employee applies for work within thirty (30) calendar days after completion of Union service.

## Section 26      ECONOMIC ACTION

(a)      Economic Action. It is the mutual intent of the parties that the procedures set forth herein shall serve as a means of peaceful settlement for all disputes that may arise between them, whether grieveable or non-grieveable. Therefore, during the period of this Agreement neither the Union, nor any of its members, officers, agents, employees, or representatives, nor any employee subject to this Agreement shall take part, or encourage, solicit, or cause another to take part, in any strike, boycott, demonstration, sympathy strike, work stoppage, picketing, signal picketing, hand billing, sit-down, stay-in, sick-out, slow-down, or any type of curtailment or restriction of operations, or any activity which tends to, or is intended to, interfere with any of the Employer's operations. During the period of this Agreement the Employer will not lock out any employee.

(b)      Employer Action. The Union agrees that a violation of this Section shall cause the Employer irreparable harm and injury that in the event the Union or any employee covered hereby violates this Section, the Employer may obtain an appropriate temporary restraining order and/or injunctive relief in addition to any relief (including without limitation the right to compel arbitration) to which it may be entitled, without regard to whether the dispute is subject to the grievance procedure set forth below. In no event shall this Section 26(b) be deemed or constituted a waiver by the Employer or the Union or their respective rights to compel arbitration. In the event this Section 26(b) is declared by a court of competent jurisdiction to be unlawful or void or without force or effect, or is interrupted by such court so as to prevent the Employer from compelling arbitration, then this Section 26(b) shall be deemed deleted and such deletion shall have no force or effect on the remaining provisions of this Section or this Agreement, and any such deletion shall have no effect on the Employer's rights under law to obtain a temporary restraining order and/or injunctive relief.

(c)      Union Action. In the event of a breach of this Section, the Union, its officers and representatives, shall do everything within their power to end or avert such activity.

## Section 27      GRIEVANCE PROCEDURE

(a)      Employees are encouraged to first bring any type of dispute, disagreement, or concern to the employee's supervisor or manager, or the Employer's Human Resources Department, regardless of whether the employee believes this Agreement to have been violated.

(b)      Grievance Definition - For purposes of this Agreement, a grievance is defined as a dispute between the parties as to the interpretation or application of any provision(s) of this

Agreement that arises after this Agreement is signed and before it terminates. Further, the Union shall set forth as specifically as possible all relevant facts giving rise to the dispute, including the date(s), persons involved, and the grievant's version of the dispute or difference of opinion.

(c)     The Employer and the Union shall make available to each other, relevant information, evidence and witnesses pertaining to the subject grievance. Any information, evidence or witness identification not exchanged between the Union and the Employer cannot be used at mediation or at arbitration. This subsection may be waived by mutual agreement of the Employer and the Union.

(d)     All grievances must be submitted to the Employer's Human Resources Director or his or her designee within fourteen (14) calendar days of the employee or Union having known, or should have known, of the occurrence. The Employer has fourteen (14) calendar days in which to respond to said grievance in writing. The parties may schedule a grievance hearing at any mutually acceptable time after the Union files the grievance and prior to the Union's deadline for moving the grievance to the next step. Regardless, if a settlement of this grievance is not reached at the grievance hearing or following the Employer's response, the Union has fourteen (14) calendar days from receipt of the Employer response to request mediation or file a Notice of Intent to Arbitrate. Failure of the Union to request mediation or to present a Notice of Intent to Arbitrate within fourteen (14) days of receipt of the Employer response shall disallow any further action on the grievance unless the time period is waived by the Union and the Employer in writing.

(e)     In the event the matter cannot be amicably adjusted, if agreed to by the Union and the Employer, it may be submitted to mediation before an unpaid representative designated by Federal Mediation and Conciliation Services ("FMCS"). A mediation shall convene within fourteen (14) days after receipt of notice given in writing by either party to the FMCS that mediation is necessary. Prior to the mediation the parties shall designate whether the mediator's opinion is to be final and binding. In the event there is no agreement between the parties regarding the binding or non-binding nature of the mediator's opinion, either party may proceed to subsection 27(f) below or the parties may nevertheless by mutual agreement continue with the procedures set forth in this paragraph (e). The mediator shall provide an oral opinion upon completion of the mediation.

In the event that the parties have not designated the mediator's opinion as final and binding, or the parties do not agree to the mediation process either party may submit the issue in dispute to an impartial arbitrator by filing a Notice of Intent to Arbitrate with the FMCS. If the aggrieved party fails to notify the other of its intent to pursue said grievance to arbitration within fourteen (14) calendar days after the mediation, or within fourteen (14) days after the request for mediation is refused the grievance shall be considered abandoned.

(f)     If arbitration is resorted to, the arbitrator shall be selected by requesting a list of seven (7) arbitrators from the FMCS, all of whom shall be located in California or Nevada and

24

members of the National Academy of Arbitrators. The parties shall alternate striking names from the list, with the Union making the first strike. The decision of the arbitrator shall be final and binding upon both parties. Any expenses of the arbitrator shall be borne equally by both parties. During the period that any matter is before mediation or is in the course of arbitration, as the case may be, there shall be no stoppage of work or other economic action taken by one party against the other.

(g)     The arbitrator or mediator shall only have the authority to grant awards for grievances and shall have no authority to add to, alter, delete, modify or change the terms or provisions of this Agreement. The decision of the arbitrator shall be final and binding upon the parties.

(h)     Where a guest complaint is reduced to writing, the Employer shall not be required to reveal the guest's address or telephone number to the Union or the employee. The Employer may introduce into evidence at arbitration written guest complaints. Where the Union wishes to investigate a complaint, the Employer shall arrange for a conference call between the guest, a representative of the Union, and a representative of the Employer. The Employer shall not terminate an employee based upon a written guest complaint until the Union has the right to review all documents or recordings concerning the complaint, and the Employer may not introduce any new evidence concerning the guest complaint unless the Union has had at least seven (7) days to review such evidence.

## Section 28     HEALTH AND WELFARE

(a)     The San Diego UNITE HERE Health Fund Trust Indenture, and any amendments as may be made from time to time thereto, are hereby incorporated by reference and made a part of this Agreement. The Employer, by signing this Agreement, agrees to be bound by all the terms and provisions of said Trust Indenture.

(b)     The Employer shall pay such monthly amounts as may be deemed necessary by the Fund Trustees to provide benefits for each eligible employee covered by the terms of the Agreement to the San Diego UNITE HERE Health Fund. If premiums exceed the maximum Employer contribution at any time during the term of this Agreement, the Employer shall withhold so much of each employee's wages as necessary to pay the excess premiums. The Employer shall forward to the Trustees (on forms approved by and at a time and place designated by them) a report of the names and number of hours of employment of all employees covered by this Agreement. Said payments are to be made by the Employer directly to the Trustees of the San Diego UNITE HERE Health Fund.

(c)     It is agreed that the Trustees under the San Diego UNITE HERE Health Fund Trust Indenture shall have the authority to increase, extend or expand the coverage and/or services to

25

eligible employees under the said Plan, provided that the Employer's contribution shall not exceed the amounts set forth in (b) above.

(d)     The Employer, upon demand of the Trustees of the San Diego UNITE HERE Health Fund, shall submit such reasonable information, employment and payroll records as may be relevant and necessary for the ascertainment by the Trustees or the Union, of the amount of monies due and owing by the Employer to the Fund.

(e)     Parties agree that the existing level of benefits shall be maintained and that the contributions shall be increased as and when necessary to maintain the existing level of benefits as determined by the Trustees of the San Diego UNITE HERE Health Fund provided that in no event shall such contributions exceed the amounts as set forth in paragraph (b) above. If contributions do exceed said rates the employees will subsidize via payroll deduction.

(f)     The Trustees of the Fund, in the event payments have not been received by the Fund by the twentieth (20th) of the month succeeding the month for which payments are due, may sue said Employer for one or more of the following: An accounting, injunction, recovery of delinquent payments, reasonable costs of suit and any other relief that may be appropriate under the circumstances.

(g)     It is understood that the obligations of this Section apply to all bargaining unit employees, whether Union or not.

## Section 29     401(k) AND PENSION PLANS

(a)     Subject to eligibility, all employees may participate in the Labor Unions 401(k) Plan. The Labor Unions 401(k) Plan shall assume all costs and responsibilities for said plan. The Employer shall contribute forty-one cents (41¢) per hour worked by each employee into the 401(k) plan, which shall be increased to forty-three cents (43¢) upon ratification of this Agreement, to forty-six cents (46¢) on September 1, 2018, and to forty-nine cents (49¢) on September 1, 2019. Employer contributions shall be paid quarterly by the twenty-fifth (25th) day of the month following the preceding quarter. Provided, however, that for employees hired after November 1, 1992, Employer's contribution shall not be made until the employee has completed twenty-four (24) months of employment and the employee continuously works an average of ninety (90) hours per month measured over the prior three (3) months.

(b)     Within six-months of ratification of this Agreement, the parties shall meet to establish a new variable rate multiemployer pension plan based on the following guiding principles:
- Recognizing that pension plans have an inherent risk of unfunded liability, the plan shall be established and operated in a manner that seeks to avoid such Employer liability.

26

- The Employer shall contribute to the pension plan in the same amounts as set forth in subsection 29(a) for all employees hired after ratification.
- Each employee hired prior to ratification shall be given a choice whether to participate in the pension plan or to continue in the Labor Union 401(k) Plan. Such choice shall be made (i) within thirty (30) days of ratification, or (ii) within thirty (30) days of the pension plan being established, provided that if an employee chooses to participate in the pension plan, he/she may not choose to return to receiving Employer contributions to the 401(k).
- The Union shall have twenty-four (24) months to obtain agreement from another employer to join the new pension plan. If no other employer agrees to participate, the parties shall re-open this section of the Agreement and bargain a different provision.
- Until the new pension plan is established, the Employer's pension plan contributions (which shall be the same amounts as set forth in subsection 29(a)) shall be placed in an escrow account, with such funds being placed in low-risk investments.
- The Employer shall have one seat on the board of the new pension plan.

If the parties are unable to agree on the terms of the pension plan document, the dispute shall be resolved through arbitration, with an arbitrator selected as provided in section 27(f).

## Section 30   SHOP STEWARDS

(a)     The Union shall have the right to appoint or designate Shop Stewards in any establishment. The Shop Steward shall report to the Union and shall not interfere with the management of the business. Shop Stewards may be designated by the Union to handle grievances and shall be given time off from their regular schedule to participate in grievance meetings with management which have been scheduled at mutually agreeable times. The Employer reserves the right to schedule grievance meetings during non-working hours. The Employer and Stewards shall treat each other with mutual respect.

(b)     Shop Stewards will be certified as having completed a course of study concerning the duties and responsibilities of a Shop Steward under this Agreement. Said certificate will be sent to the Hotel. In order to be recognized as a Shop Steward, the Union shall notify the Hotel in writing of the names of elected or certified Shop Stewards and any changes thereto.

(c)     Shop Stewards shall not interfere with the Employer's direction of the work force or with customers. The duties of the Shop Stewards shall not interfere with their duties as an employee or the duties of any employee.

## Section 31   EMPLOYMENT CONDITIONS

(a)     When an employee is required as a condition of employment to be bonded, the Employer shall pay the cost of said bond.

(b)     At no time shall any employee be required, and no manager or supervisor may request an employee, to use his/her own tools or supplies to perform work for the Employer.

## Section 32     SUCCESSORS AND ASSIGNS CLAUSE

(a)     This agreement shall be binding on and any and all successors and assigns of the Employer, whether by sale, transfer, merger, acquisition, consolidation or otherwise. The Employer shall make it a condition of transfer that the successor or assign shall be bound by the terms of this Agreement. The Union shall not be required to post a bond or other security as a condition to obtaining an injunction or other equitable relief against a violation or threatened violation of this section 32. The foregoing shall not apply to any subcontracting or outsourcing past practice that the Employer continues. Nor shall it apply to any lease, outsourcing, or sale of any restaurant space located adjacent to El Camino Real.

(b)     There shall be no subcontracting of VUE during the term of this Agreement, absent mutual agreement. The term "subcontracting" is defined to include the sale, assignment, lease, or transfer of such outlet to or by a third party, including a lease or other arrangement with a third party for the operation of a food and/or beverage outlet or facility within the hotel. In the event of any subcontracting of Bob's Steak & Chop House the Employer shall arrange for new operator to interview employees on a priority basis.

## Section 33     BULLETIN BOARDS

The Union shall have the use of one locked, glass-enclosed bulletin board for the posting of official signed Union notices only, including all seniority lists, in each of the four following areas: (1) employee cafeteria, (2) housekeeping break area, (3) maintenance shop, (4) landscaping shop, and (5) banquet area. Such notices shall be dated at the time of the posting and shall remain on the bulletin board for a reasonable time period. No material of an inflammatory or derogatory nature shall be posted nor any political campaign material related to Union activities.

## Section 34     ENTIRE AGREEMENT

(a)     The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and agreement arrived at by the parties after lengthy discussions and exercise of those rights and opportunities are set forth in this Agreement. The provisions of this Agreement constitute the entire Agreement between the Employer and the Union and may be changed only in accordance with the provisions set forth herein, or by mutual agreement of the parties reduced to writing and signed by them.

(b)      The Employer and the Union for the life of this Agreement, voluntarily and unqualifiedly, waive the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter referred to or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered by this Agreement even though the subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

(c)      No one or more provisions of this Agreement may be interpreted to deny to the Employer the right to do anything not forbidden by the Agreement. Employer policies and practices may not be subject to the grievance procedure or any other form of redress unless specifically addressed herein. No other Employer benefits or obligations arising out of prior practice shall be binding upon the Employer.

## Section 35      IMMIGRATION

(a)      No employee covered by this Agreement shall suffer any loss of seniority, compensation or benefits solely due to any changes in the employee's name or social security number, provided that the new social security number is valid and the employee is authorized to work in the United States. The Employer shall not take action against an employee solely because the employee is subject to an immigration proceeding where the employee is otherwise permitted to work.

(b)      Workplace Immigration Enforcement. The Employer shall:

(i)      Unless objected to by the affected employee, notify a representative of the Union as soon as practical if the Employer receives a no-match letter from the Social Security Administration or is contacted by the Department of Homeland Security (DHS) (formerly the INS) related to the immigration status of an Employee covered by this Agreement or if a search and/or arrest warrant, administrative warrant, subpoena or other request for documents is presented in order that the Union can take steps to protect the rights of its members. The Union agrees that it shall keep confidential any information it obtains pursuant to this provision and that it will use any such information solely to represent and/or assist the affected Employee(s) in regard to the DHS matter.

(ii)      Refuse admittance of any agents of the DHS who do not possess a search and/or arrest warrant, administrative warrant, subpoena or other legal process signed by a federal judge or magistrate, unless the Employer is otherwise required by law to admit such person.

29

(iii)    Permit inspection of I-9 forms by DHS or DOL only after a minimum of three (3) days written notice or other such period of time as provided by law or where such inspection is otherwise in accordance with the provisions of this section 35. The Employer also shall permit inspection of I-9 forms where a DHS search and/or arrest warrant, administrative warrant, subpoena or other legal process signed by a federal judge or magistrate specifically names employees or requires the production of I-9 forms. The Employer shall not provide documents other than the I-9 forms to the DHS for inspection or reveal to the DHS the names, addresses or immigration status of any employees in the absence of a valid DHS administrative subpoena, or a search warrant or subpoenas signed by a federal judge or magistrate or where otherwise required by law.

(iv)    To the extent legally possible, the Employer shall offer a private setting for questioning of employees by DHS.

(c)    Reverification of Status

(i)    No employee employed continuously on or before November 6, 1986, shall be required to document immigration status.

(ii)    The Employer shall not require or demand proof of immigration status, except as may be required by 8 U.S.C. § 1324a(1)(B) and listed on the back of the I-9 form or as otherwise required by law.

(iii)    In the event of a sale of the business or its assets, the Employer shall offer to transfer the I-9 forms of its employees to the new Employer or, at the Employer's option, to jointly maintain the I-9 form of its employees with the successor Employer for the period of three (3) years after which the successor Employer shall maintain said forms.

(d)    Social Security No-Match Letters. In the event that the Employer receives notice from the Social Security Administration ("SSA") that one or more of the employee names and social security numbers ("SSN") that the Employer reported on the wage and tax statements (Forms W-2) for the previous tax year do not agree with SSA's records, the Employer agrees to the following:

(i)    The Employer agrees that it will not take any adverse action against any employee listed on the notice, including firing, laying off, suspending, retaliating, or discriminating against any such employee solely as a result of the receipt of a no-match letter,

30

(ii)     The Employer agrees that it will not require employees listed on the notice to bring in a copy of their social security card for the Employer's review, complete a new I-9 form, or provide new or additional proof of work authorization or immigration status solely as a result of the receipt of a no-match letter, and

(iii)    The Employer agrees not to contact the SSA or any other governmental agency, solely as a result of receiving a no-match from the SSA.

(e)     Seniority for Immigration Related Issues.

(i)     In the event that a employee does not provide adequate proof that he/she is authorized to work in the United States following his/her probationary or introductory period, and his/her employment is terminated for this reason, the Employer agrees to immediately reinstate the employee to his/her former position, without loss of prior seniority (but seniority does not continue to accrue during the period of termination) upon the employee providing proper work authorization within twelve (12) months from the date of termination.

(ii)    If the employee needs additional time to obtain his work authorization, the Employer will rehire the employee into the next available opening in the employee's former classification, as a new hire without seniority, upon the employee providing proper work authorization within a maximum of twelve (12) additional months. The parties agree that such employees would be subject to a probationary period in this event.

(iii)   The Employer will furnish a personalized letter stating the employee's rights and obligations under this subsection 35(e) to any employee terminated because he/she had not provided adequate proof he/she is authorized to work in the United States.

(f)     Limited English Proficient Workers.

(i)     While English is the language of the workplace, the Employer recognizes the right of employees to use the language of their choice when speaking among themselves during work hours provided that such conversations are conducted in a manner that is respectful of guests and other employees and is consistent with quality guest service.

(ii)    Upon request of the employee, the Employer shall provide interpreters from its staff, where such staff is available, for employees not fluent in English

31

during any investigative interview that may lead to discipline or discharge. Where the Employer is unable to so provide an interpreter, the Union may provide an interpreter. In the event that an interpreter is not readily available, timelines for issuance of the disciplinary notice shall automatically be tolled until an appropriate interpreter is available.

(g)    Unpaid Leave. Upon request, employees shall be released for a total of five (5) unpaid working days during the term of this Agreement in order to attend Bureau of Citizenship and Immigration Services (BCIS) proceedings and any related matters for the Employee only. The Employer may request verification of such absence.

(h)    Paid Citizenship Holiday. On the day that an employee is sworn in as a U.S. citizen, the employee will be excused from work and will be compensated for all lost time at the same rate used for holiday pay.

(i)    Legality. The Union and the Employer agree that this Agreement shall not be interpreted to cause or require the Employer to violate IRCA, 8 U.S.C. § 1324a or any private or public entity to conduct an audit or inspection of its I-9 forms or personnel records. In the event any applicable law requires the Employer not to comply with any provision of this section 35, the parties shall meet to discuss an appropriate revision.

(j)    If an employee, or the Union on behalf of an employee, files a grievance to challenge an alleged violation of this section 35, the employee shall be deemed to have waived his/her right of court or government agency enforcement of any alleged violation of laws related to this section.

## Section 36    ROOM ATTENDANT WORK LOAD

(a)    <u>Daily Quota</u>. Room attendants shall clean within eight (8) hours the following number of credits:

      (i)    twelve (12) villa rooms;
      (ii)    thirteen (13) rooms in the spa rooms (400 to 500 buildings), and
      (iii)    fourteen (14) rooms in other areas of the hotel.

However, from Memorial Day to Labor Day each of the above-quotas shall be reduced by one (1) room.

(b)    <u>Multiple Credits</u>. The following suites/villa rooms shall be given the following credits:

| | | |
|---|---|---|
| (i) | Presidential suite | three (3) rooms; |
| (ii) | Parlor suites | two (2) rooms; |
| (iii) | La Costa suites | one and one-half (1.5) rooms; |

(iv)    Rooms 6502, 6505, 6508, 6511, 6513, 6514, 6515, 6517, 6518, 6521, 6524, 6527, 6530, 6532, 6533, 6534, 6536, 6537, 6540, 6543, 6546, 6549, 6551, 6552, 6553, 6555, and 6556         one and one-half (1.5) rooms.

(c)    <u>Checkout Credits</u>. When a room attendant is assigned to complete ten (10) or more checkout credits, the room attendant's quota for the day shall be reduced by one (1). When a room attendant is assigned to complete nine (9) or more villa checkout credits, the room attendant's quota for the day shall be reduced by one (1).

(d)    <u>Travel Credits</u>. If a room attendant is assigned rooms in two (2) or more areas of the resort, the room attendant's quota for the day shall be reduced by one (1). If a room attendant is assigned rooms in three (3) or more areas of the resort, the room attendant's quota for the day shall be reduced by two (2). Following shall be considered the "areas of the resort" for purposes of this travel credit: golf, plaza, tennis, spa, villa one, and villa two. If a room attendant is assigned rooms in both buildings N1 (rooms 901-934) and N3 (rooms 971-999), the room attendant's quota for the day shall be reduced by one (1).

(e)    <u>DNDs</u>. Room attendants shall continue to report the housekeeping office any rooms with "do not disturb" signs (DND). Any DNDs remaining by mid-afternoon may be replaced based on business needs.

(f)    <u>Maximum Credits.</u> The maximum number of credits a room attendant may receive from subsections 36(c) and (d) shall be three (3) per day.

(g)    <u>Discretionary Credits</u>. Management in its sole discretion may reduce the number of rooms to be cleaned during a shift or assign a house attendant to assist room attendants with their rooms where, for example, rooms are exceptionally dirty or deep cleaning is required.

(h)    <u>Bought Rooms</u>. A bonus of one-half the Schedule A hourly rate for room attendants shall be paid for each room over the above-requirements during an eight (8) hour shift. No bonus shall be paid for rooms cleaned during overtime hours.

(i)    <u>Pet Rooms</u>. Room attendants shall report on their assignment sheet that a pet is in a guest room, unless already noted. A bonus of one-half the Schedule A hourly rate for room attendants shall be paid for cleaning a check out room in which the guest had a pet in the room. No bonus shall be paid for cleaning pet rooms during overtime hours.

33

(j)     _Rollaways/Sofa Beds_. Room attendants and overnight shift public area attendants will be paid two dollars and fifty cents ($2.50) for each rollaway and/or sofa bed serviced.

(k)     _Insufficient Linen/Supplies_. Room attendants shall not be disciplined or penalized for not completing duties as a direct result of the Employer not providing sufficient linen or supplies.

(_l_)     _Room Attendant Assignments_. Room sections shall be assigned in numerical order to minimize potential travel and overlapping sections. The Employer will not replace checkout rooms from one room attendant's section with stayover rooms from another room attendant's section that day to avoid the checkout language. An inspector(s)/inspectress(es) that is scheduled as a room attendant pursuant to subsection 22(e) shall be assigned the last section(s).

## Section 37      NON-DISCRIMINATION

There shall be no discrimination against any employee on account of membership in or activity on behalf of the Union, nor on any other basis prohibited by federal, state, or local law.

## Section 38      DURATION OF AGREEMENT

This Agreement shall remain in full force and effect from January 1, 2017 (unless otherwise specified herein) to December 31, 2019, and from year to year thereafter unless either party has given ninety (90) days written notice prior to December 31, 2019, to the other party of its intention to amend, modify, or terminate this Agreement.

**FOR THE EMPLOYER:**                    **FOR THE UNION:**

**OMNI LA COSTA RESORT AND SPA**        **UNITE HERE LOCAL 30, AFL-CIO**

By:_____            By:_____

Title:_____           Title:_____

Date:_____            Date:_____

34

**Schedule A**

| Kitchen Production | | 1/1/2017 | | 7/1/2017 | | 1/1/2018 | | 7/1/2018 | | 1/1/2019 | | 7/1/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sous Chef | $ | 19.80 | $ | 20.10 | $ | 20.35 | $ | 20.65 | $ | 20.90 | $ | 21.20 |
| Cook I | $ | 17.52 | $ | 17.82 | $ | 18.07 | $ | 18.37 | $ | 18.62 | $ | 18.92 |
| Cook II | $ | 16.42 | $ | 16.72 | $ | 16.97 | $ | 17.27 | $ | 17.52 | $ | 17.82 |
| Cook III | $ | 15.84 | $ | 16.14 | $ | 16.39 | $ | 16.69 | $ | 16.94 | $ | 17.24 |
| Butcher | $ | 16.57 | $ | 16.87 | $ | 17.12 | $ | 17.42 | $ | 17.67 | $ | 17.97 |
| Pastry I | $ | 17.52 | $ | 17.82 | $ | 18.07 | $ | 18.37 | $ | 18.62 | $ | 18.92 |
| Pastry II | $ | 16.42 | $ | 16.72 | $ | 16.97 | $ | 17.27 | $ | 17.52 | $ | 17.82 |
| Cafeteria Attendant | $ | 14.91 | $ | 15.21 | $ | 15.46 | $ | 15.76 | $ | 16.01 | $ | 16.31 |
| | | | | | | | | | | | | |
| **Stewarding Department** | | **1/1/2017** | | **7/1/2017** | | **1/1/2018** | | **7/1/2018** | | **1/1/2019** | | **7/1/2019** |
| Steward | $ | 15.16 | $ | 15.51 | $ | 15.81 | $ | 16.16 | $ | 16.46 | $ | 16.81 |
| Lead Steward | $ | 15.65 | $ | 16.00 | $ | 16.30 | $ | 16.65 | $ | 16.95 | $ | 17.30 |
| | | | | | | | | | | | | |
| **Food and Beverage Outlets** | | **1/1/2017** | | **7/1/2017** | | **1/1/2018** | | **7/1/2018** | | **1/1/2019** | | **7/1/2019** |
| Beverage Server* | Minimum Wage | | | | | | | | | | | |
| Bartender* | Minimum Wage | | | | | | | | | | | |
| Bartender (Service)* | Minimum Wage | | | | | | | | | | | |
| Barback* | Minimum Wage | | | | | | | | | | | |
| Food Server* | Minimum Wage | | | | | | | | | | | |
| Busser* | Minimum Wage | | | | | | | | | | | |
| Runner* | Minimum Wage | | | | | | | | | | | |
| Buffet Attendant* | $ | 12.96 | $ | 13.26 | $ | 13.51 | $ | 13.81 | $ | 14.06 | $ | 14.36 |
| Host/Hostess | $ | 15.35 | $ | 15.65 | $ | 15.90 | $ | 16.20 | $ | 16.45 | $ | 16.75 |
| Cashier | $ | 14.90 | $ | 15.20 | $ | 15.45 | $ | 15.75 | $ | 16.00 | $ | 16.30 |
| Room Service Lead | $ | 13.58 | $ | 13.88 | $ | 14.13 | $ | 14.43 | $ | 14.68 | $ | 14.98 |
| Room Service Server* | Minimum Wage | | | | | | | | | | | |
| Room Service Busser* | Minimum Wage Plus $1.00 Upon Ratification of Agreement | | | | | | | | | | | |
| Outlet Lead | $ | 17.85 | $ | 18.15 | $ | 18.40 | $ | 18.70 | $ | 18.95 | $ | 19.25 |
| | | | | | | | | | | | | |
| **Market Place** | | **1/1/2017** | | **7/1/2017** | | **1/1/2018** | | **7/1/2018** | | **1/1/2019** | | **7/1/2019** |
| Attendant | $ | 14.80 | $ | 15.10 | $ | 15.35 | $ | 15.65 | $ | 15.90 | $ | 16.20 |
| | | | | | | | | | | | | |
| **Banquet Department** | | **1/1/2017** | | **7/1/2017** | | **1/1/2018** | | **7/1/2018** | | **1/1/2019** | | **7/1/2019** |
| Banquet Server* | Minimum Wage | | | | | | | | | | | |
| Banquet Bartender* | Minimum Wage | | | | | | | | | | | |
| Banquet Captain* | Minimum Wage | | | | | | | | | | | |
| Banquet Houseperson | $ | 14.15 | $ | 14.50 | $ | 14.80 | $ | 15.15 | $ | 15.45 | $ | 15.80 |
| Banquet Set-up Captain | $ | 14.15 | $ | 14.50 | $ | 14.80 | $ | 15.15 | $ | 15.45 | $ | 15.80 |
| | | | | | | | | | | | | |
| **Guest Service** | | **1/1/2017** | | **7/1/2017** | | **1/1/2018** | | **7/1/2018** | | **1/1/2019** | | **7/1/2019** |
| Bellperson/Valet Captain* | Minimum Wage Plus $1.00 Upon Ratification of Agreement | | | | | | | | | | | |
| Bellperson/Valet Attendant* | Minimum Wage | | | | | | | | | | | |
| Guest Service Agent | $ | 15.80 | $ | 16.10 | $ | 16.35 | $ | 16.65 | $ | 16.90 | $ | 17.20 |
| Guest Service Lead | $ | 18.15 | $ | 18.45 | $ | 18.70 | $ | 19.00 | $ | 19.25 | $ | 19.55 |
| Concierge | $ | 15.80 | $ | 16.10 | $ | 16.35 | $ | 16.65 | $ | 16.90 | $ | 17.20 |

**Schedule A**

| Night Auditor | $ 16.85 | $ 17.15 | $ 17.40 | $ 17.70 | $ 17.95 | $ 18.25 |
|---|---|---|---|---|---|---|
| Telephone Operators | $ 15.03 | $ 15.33 | $ 15.58 | $ 15.88 | $ 16.13 | $ 16.43 |
| Rooms Controller | $ 17.10 | $ 17.40 | $ 17.65 | $ 17.95 | $ 18.20 | $ 18.50 |
| Reservations Agent | $ 16.00 | $ 16.30 | $ 16.55 | $ 16.85 | $ 17.10 | $ 17.40 |
| | | | | | | |
| **Housekeeping** | **1/1/2017** | **7/1/2017** | **1/1/2018** | **7/1/2018** | **1/1/2019** | **7/1/2019** |
| Inspector/Inspectress | $ 15.95 | $ 16.25 | $ 16.50 | $ 16.80 | $ 17.05 | $ 17.35 |
| Room Attendant | $ 15.11 | $ 15.41 | $ 15.66 | $ 15.96 | $ 16.21 | $ 16.51 |
| Porter | $ 15.11 | $ 15.41 | $ 15.66 | $ 15.96 | $ 16.21 | $ 16.51 |
| House Attendant | $ 15.11 | $ 15.41 | $ 15.66 | $ 15.96 | $ 16.21 | $ 16.51 |
| Seamstress | $ 15.11 | $ 15.41 | $ 15.66 | $ 15.96 | $ 16.21 | $ 16.51 |
| Office Coordinator | $ 16.20 | $ 16.50 | $ 16.75 | $ 17.05 | $ 17.30 | $ 17.60 |
| Project Technician | $ 15.40 | $ 15.70 | $ 15.95 | $ 16.25 | $ 16.50 | $ 16.80 |
| Turndown Attendant | $ 15.52 | $ 15.82 | $ 16.07 | $ 16.37 | $ 16.62 | $ 16.92 |
| Housekeeping Lead | $ 17.50 | $ 17.80 | $ 18.05 | $ 18.35 | $ 18.60 | $ 18.90 |
| Public Area Attendant | $ 15.26 | $ 15.56 | $ 15.81 | $ 16.11 | $ 16.36 | $ 16.66 |
| Uniform Clerk | $ 15.06 | $ 15.36 | $ 15.61 | $ 15.91 | $ 16.16 | $ 16.46 |
| | | | | | | |
| **Maintenance** | **1/1/2017** | **7/1/2017** | **1/1/2018** | **7/1/2018** | **1/1/2019** | **7/1/2019** |
| Irrigation Technician | $ 15.30 | $ 15.60 | $ 15.85 | $ 16.15 | $ 16.40 | $ 16.70 |
| Irrigation Foreman | $ 18.05 | $ 18.35 | $ 18.60 | $ 18.90 | $ 19.15 | $ 19.45 |
| Equipment Operator | $ 14.90 | $ 15.25 | $ 15.55 | $ 15.90 | $ 16.20 | $ 16.55 |
| Outdoor Gardeners | $ 14.85 | $ 15.20 | $ 15.50 | $ 15.85 | $ 16.15 | $ 16.50 |
| Indoor Gardeners | $ 14.85 | $ 15.20 | $ 15.50 | $ 15.85 | $ 16.15 | $ 16.50 |
| Maintenance Lead | $ 22.85 | $ 23.15 | $ 23.40 | $ 23.70 | $ 23.95 | $ 24.25 |
| Engineer I | $ 21.85 | $ 22.15 | $ 22.40 | $ 22.70 | $ 22.95 | $ 23.25 |
| Engineer II | $ 20.85 | $ 21.15 | $ 21.40 | $ 21.70 | $ 21.95 | $ 22.25 |
| Engineer III | $ 18.85 | $ 19.15 | $ 19.40 | $ 19.70 | $ 19.95 | $ 20.25 |
| Engineer IV | $ 17.35 | $ 17.65 | $ 17.90 | $ 18.20 | $ 18.45 | $ 18.75 |
| | | | | | | |
| **Purchasing** | **1/1/2017** | **7/1/2017** | **1/1/2018** | **7/1/2018** | **1/1/2019** | **7/1/2019** |
| Storeroom Clerk | $ 14.85 | $ 15.15 | $ 15.40 | $ 15.70 | $ 15.95 | $ 16.25 |
| | | | | | | |
| **Golf** | **1/1/2017** | **7/1/2017** | **1/1/2018** | **7/1/2018** | **1/1/2019** | **7/1/2019** |
| Golf Marshall/Starter* | Minimum Wage | | | | | |
| Range Attendant* | Minimum Wage | | | | | |
| Assistant Golf Professionals* | Minimum Wage Plus $2.00 Upon Ratification of Agreement | | | | | |
| Tournament Coordinator* | Minimum Wage | | | | | |
| Bag Room Attendant* | Minimum Wage | | | | | |
| Snack Bar/Beverage Cart* | Minimum Wage | | | | | |
| | | **Ratification** | **1/1/2018** | **7/1/2018** | **1/1/2019** | **7/1/2019** |
| Locker Attendant | | $ 12.00 | $ 12.55 | $ 12.55 | $ 13.10 | $ 13.10 |
| | | | | | | |

*Tipped employees eligible for vacation pay as provided in subsection 20(c)

Wage increases shall be implemented at the beginning of the payroll period nearest to (before/after) each of the above dates.

## **Schedule B**

Established levels at or above the following numbers are deemed a positive result for the substances listed below:

Alcohol (blood alcohol level)          .02%                          .02%

| Substance | Screen Level (ng/mL) | Confirm Level (ng/mL) |
|---|---|---|
| Amphetamines | 1000 | 500 |
| Barbituates | 300 | 100 |
| Benzodiazepines | 300 | 100 |
| Cannabinoids | 50 | 15 |
| Cocaine Metabolite | 300 | 150 |
| Methadone | 300 | 100 |
| Methaqualone | 300 | 100 |
| Opiates | 300 | 300 |
| PCP (Phencyclidine) | 25 | 25 |
| Propoxyphene | 300 | 100 |

# OMNI LA COSTA RESORT AND SPA
## BOB'S STEAK & CHOP HOUSE
## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") sets forth all wages, hours, and other terms and conditions of employment agreed upon between Omni Hotel Management Corporation, d/b/a Omni La Costa Resort and Spa ("Employer" or "Resort") and UNITE HERE Local 30, AFL-CIO ("Union"), in variance from those in existence elsewhere at the Resort, covering employees working in Bob's Steak & Chop House ("Restaurant"). In bargaining for this MOU, the parties understand that the Resort has the objectives of, among other things, continuing the operation a successful fine dining destination Restaurant. Accordingly, the Employer shall train and employ in the Restaurant only those employees who are qualified, capable, and work to achieve these objectives.

1.     **Employees Covered** This MOU shall cover all full-time and regular part-time employees listed in the attached Schedule A, to the extent the Employer deems it appropriate to employ and schedule employees in such classifications. Managers, supervisors, and guards, as defined in the Act, shall be excluded. The parties agree that this MOU shall not apply to the Restaurant's executive chef and two executive sous chefs who may perform all culinary functions.

2.     **Wages** The minimum hourly wages to be paid to employees who are employed in the Restaurant for at least twelve months are set forth in the attached Schedule A. Additionally, the Employer shall require that an automatic gratuity of eighteen percent (18%) be added to the check for dinner groups of six (6), unless the guest chooses to opt out of the automatic gratuity. The Employer shall continue its practice of compensating servers with an eighteen percent (18%) service charge for service of food and beverage pursuant to a restaurant event order.

3.     **Duties** The parties agree that in order to fulfill the Employer's objectives, employees may be assigned and required to perform tasks and duties outside of an employee's usual daily assignment.

4.     **Seniority** The parties acknowledge that the classifications set forth in the attached Schedule A shall be deemed as having separate seniority from the same or similar classifications utilized elsewhere in the Resort. No employee employed outside of the Restaurant shall have the right to transfer or bump into any of these Restaurant classifications. Employees in these classifications may work in other classifications in the Resort, but may not use their Resort seniority to be scheduled over or bump an employee in a classification outside the Restaurant.

5.     **Hiring and Transfers** The Employer shall be the sole judge of an individual's ability and qualifications to work in the Restaurant. Neither the Union nor an employee may grieve the Employer's decision not to hire or transfer an employee into the Restaurant. Likewise, neither the Union nor an employee may grieve the Employer's decision to transfer an employee out of the Restaurant to a similar food and beverage position elsewhere in the Resort.

FOR THE EMPLOYER:

OMNI LA COSTA RESORT AND SPA


By:_____

Title:_____

Date:_____


FOR THE UNION:

UNITE HERE LOCAL 30, AFL-CIO


By:_____

Title:_____

Date:_____

**Bob's Steak and Chop House**
**Schedule A**

| | 1/1/2017 | 7/1/2017 | 1/1/2018 | 7/1/2018 | 1/1/2019 | 7/1/2019 |
|---|---|---|---|---|---|---|
| Sous Chef | $ 19.80 | $ 20.10 | $ 20.35 | $ 20.65 | $ 20.90 | $ 21.20 |
| Cook I | $ 17.52 | $ 17.82 | $ 18.07 | $ 18.37 | $ 18.62 | $ 18.92 |
| Cook II | $ 16.42 | $ 16.72 | $ 16.97 | $ 17.27 | $ 17.52 | $ 17.82 |
| Cook III | $ 15.84 | $ 16.14 | $ 16.39 | $ 16.69 | $ 16.94 | $ 17.24 |
| Pantry | $ 15.06 | $ 15.36 | $ 15.61 | $ 15.91 | $ 16.16 | $ 16.46 |
| | | | | | | |
| Greeter | $ 15.35 | $ 15.65 | $ 15.90 | $ 16.20 | $ 16.45 | $ 16.75 |
| Outlet Lead | $ 17.85 | $ 18.15 | $ 18.40 | $ 18.70 | $ 18.95 | $ 19.25 |
| | | | | | | |
| Food Server* | Minimum Wage | | | | | |
| Busser* | Minimum Wage | | | | | |
| Beverage Server* | Minimum Wage | | | | | |
| Bartender* | Minimum Wage | | | | | |
| Barback/Food Runner* | Minimum Wage | | | | | |
| | | | | | | |
| *Tipped employees eligible for vacation pay as provided in subsection 20(c) | | | | | | |
| Wage increases shall be implemented at the beginning of the payroll period nearest to (before/after) each of the above dates. | | | | | | |

**Omni La Costa Resort & Spa**

December 5, 2017

Ms. Brigette Browning
President
UNITE HERE Local 30
2436 Market Street
San Diego, CA 92102

Re:      Subcontracting

Dear Ms. Browning:

Section 32 of the collective bargaining agreement shall be supplemented with the following:

> The Employer shall not contract with a third party to perform housekeeping work. This shall not apply to work that was performed by third parties in the past.
>
> In the event the Employer subcontracts any other bargaining unit work, the Employer shall: (1) give notice to the Union; (2) bargain with the Union over the effects thereof; and (3) arrange for the third party to interview employees on a priority basis.

Sincerely,

Gary Sims
Managing Director

Acknowledged and agreed upon:

_____
Brigette Browning, President
UNITE HERE Local 30, AFL-CIO

**Omni La Costa Resort & Spa**

December 5, 2017

Ms. Brigette Browning
President
UNITE HERE Local 30
2436 Market Street
San Diego, CA 92102

Re:      <u>Banquet Captains</u>

Dear Ms. Browning:

The Employer shall pay the following banquet captains a base hourly rate of twenty-five dollars ($25.00) per hour:

- Pat Oshima
- Elizabeth Kratcoski
- Christine Hill
- Hector Morales
- Suleiman Jamous
- Michael Farrell
- John Rezatto

The Employer may offer each of the above-banquet captains a severance package. The Employer shall have no obligation to replace any banquet captain who voluntarily accepts a severance package or who otherwise loses his/her seniority.

Sincerely,

Gary Sims
Managing Director

Acknowledged and agreed upon:

_____
Brigette Browning, President
UNITE HERE Local 30, AFL-CIO

**Omni La Costa Resort and Spa**

December 5, 2017

Ms. Brigette Browning
President
UNITE HERE Local 30
2436 Market Street
San Diego, CA 92102

Re:    <u>Culinary Overtime</u>

Dear Ms. Browning:

The Employer shall continue its practice of offering overtime or ten (10)-hour shifts to sous chefs and to the Bistro 65 closing cook(s) hired prior to March 1, 2010. This side letter shall not apply to any other cooks or to any sous chefs hired or promoted after March 1, 2010.

Sincerely,

Gary Sims
Managing Director

Acknowledged and agreed upon:

_____
Brigette Browning, President
UNITE HERE Local 30, AFL-CIO

Omni La Costa Resort and Spa

<u>CONFIDENTIAL</u>

December 5, 2017

Ms. Brigette Browning
President
UNITE HERE Local 30
2436 Market Street
San Diego, CA 92102

Re:     <u>Section 28 Health and Welfare</u>

Dear Ms. Browning:

  In order to facilitate the continuous provision and advancement of quality multi-employer health and welfare benefits for bargaining unit employees ("Employees"), Omni Hotels Management Corporation d/b/a Omni La Costa Resort & Spa ("Employer") agrees to continue participating in the San Diego UNITE HERE Health Fund ("Fund"), as provided in section 28 of our collective bargaining agreement ("CBA") and this side letter. Accordingly, the parties hereto have established a revised procedure that permits UNITE HERE Local 30 ("Union"), the Employer, and the Fund to test a more precise manner of funding and providing such benefits.

**I.     *Funding***

  As used in section 28 of the CBA, the phrase "such monthly amounts as may be deemed necessary by the Fund Trustees" shall not exceed the following amounts: Effective upon ratification of the CBA and this side letter, the sum of eight hundred forty-nine dollars ($849.00) per month for each Eligible Employee, which shall be increased to eight hundred eighty-five dollars ($885.00) on September 1, 2018, and to nine hundred fifty-six dollars ($956.00) on September 1, 2019.

**II.    *Definitions***

  **A.     *Eligible Employee***

  As used in section 28 of the CBA, an Employee shall become an "Eligible Employee" as follows:

    **1.**     An Employee hired after ratification of the CBA and this side letter shall shall become an "Eligible Employee" in the first calendar month following the Employee's completion of two (2) consecutive full calendar months of employment with the Employer during

which the employee works a total of at least two hundred sixty (260) hours. Additionally, thereafter, to be an "Eligible Employee" the Employee must work an average of at least one hundred ten (110) hours per month. Eligible Employees hired after ratification may not bank hours, but may "buy up" to remain an Eligible Employee as provided in part IV.B below.

   **2.** An Employee hired prior to ratification of the CBA and this side letter (who does not meet the exception set forth in part II.A.3 below) shall become an "Eligible Employee" in the first calendar month following the Employee's completion of three (3) consecutive full calendar months of employment with the Employer during which the employee works a total of at least three hundred and thirty (330) hours. Additionally, thereafter, to be an "Eligible Employee" the Employee must work an average of at least:

- one hundred and ten (110) hours in a month during the next six (6) calendar months;
- one hundred (100) hours in a month during the next twelve (12) calendar months;
- ninety (90) hours in a month during all months thereafter.

   **3.** Notwithstanding part II.A.2 above, each Employee who was enrolled in the predecessor-employer's insurance plan as of January 1, 2005, shall be deemed an "Eligible Employee," provided he/she continues to work an average of at least ninety (90) hours in a month.

  **B.**  ***Average Hours and Hours Bank***

   To determine the "average" number of hours worked by an Employee in any month, the Employer shall add the total hours worked by the Employee in the three (3) prior consecutive months and divide the sum by three (3). For purposes of determining eligibility, time paid for but not worked shall be considered time worked.

   Only Employees hired prior to ratification of the CBA and this side letter shall continue to "bank" any hours over the minimum needed in any month to be an Eligible Employee, up to a cap of one hundred thirty-five (135) hours. Banked hours may be used by an Employee in any future months to meet the minimum hours requirement in order for an Employee to remain an Eligible Employee. Accordingly, in calculating the average number of hours worked by an Employee, if the Employee falls short of the minimum, the Employer shall deduct any banked hours the Employee may have to meet the minimum hours requirement.

   For example, assume that in 2014 an Employee works an average of one hundred fifty (150) hours per month in April, May, and June, an average of ninety (90) hours per month during July, August, and September, and an average of fifty (50) hours per month in October, November, and December. Thus, the Employee will bank sixty (60) hours per month in April, May, and June, up to the cap of one hundred thirty-five (135) hours. Instead of losing his/her Eligible Employee status in October 2014, the Employer would deduct forty (40) hours per month from the Employee's hours bank in October, November, and December 2014 (leaving a balance of fifteen (15) hours) to allow the Employee to remain an Eligible Employee during those last three months of 2014.

### III.   *Procedures*

Once an Employee becomes an "Eligible Employee" in a given calendar month by meeting the definition and qualifications set forth herein, the Employer shall notify the Fund and shall make the required contribution to the Fund. The Fund shall then provide coverage for the Employee in the following month. If the Fund requires an Employee co-payment, such amount shall be deducted from the Employee's paycheck as directed by the Employee and the Fund.

Thus, for example, in July 2014, the Employer shall notify the Fund of then "Eligible Employees" (based on average hours worked from April 2014 through June 2014). Further, the Employer shall make contributions for all Eligible Employees in July 2014. The Employees shall receive Fund benefits in August 2014 for the July 2014 contributions.

By way of example for a new Employee, if an Employee is hired on January 21, 2014, he or she would become an "Eligible Employee" in May 2014, provided the employee works an average of 110 hours in February, March, and April 2014. In May, the Employer would report to the Fund that this Employee has become eligible for benefits. The Employer would make a contribution to the Fund in May 2014 for this Employee, and the Employee would receive Fund benefits beginning June 1, 2014. Beginning in November 2014, the employee would need to work an average of only 100 hours per month to remain an eligible employee. Beginning in November 2015, and continuing at least for the remainder of the term of the CBA, the employee would need to work an average of only 90 hours per month to remain an eligible employee.

### IV.   *Buying Up*

**A.**   Employees hired prior to ratification of the CBA and this side letter who reach the ninety (90) qualifying hour requirement may, by giving appropriate written notice to the Fund and the Employer during an open enrollment period, remain an "Eligible Employee" in any one of up to three (3) months of the following plan year, provided: (1) the Employee works at least an average of seventy (70) hours in such month; and (2) the Employee pays a pro-rated portion of the Employer's premium for that month. The pro-rated payment shall be calculated by the difference of ninety (90) and the average number of hours worked, dividing that difference by ninety (90), and multiplying that percentage by the amount of the Employer's premium. For example if a qualified "Eligible Employee" works 75 hours in a month, the Employee would be required to pay 15/90ths, or 16.667%, of the Employer's premium for that month.

**B.**   Employees hired after ratification of the CBA and this side letter may "buy up" to remain an Eligible Employee, provided: (1) the Employee works at least seventy (70) hours in such month; and (2) the Eligible Employee pays a pro-rata portion of the Employer's premium for that month. The prorated payment shall be calculated by the difference of one hundred ten (110) and the number of hours worked, dividing that difference by one hundred ten (110), and multiplying that percentage by the amount of the Employer's premium. For example, if an Eligible Employee hired after ratification works an average of eighty (80) hours in a month, the Employee would be required to pay 30/110ths, or 27.272%, of the Employer's premium for that month.

3

V.      *Waivers*

     A.      *Declination Payment*

The Employer shall not make any contributions on behalf of an Eligible Employee who provides proof of coverage under another insurance plan and signs a declination of coverage under the San Diego UNITE HERE Health Fund. The Employer shall pay to each such Eligible Employee the sum of fifty dollars ($50.00) ("Declination Payment") per month in which the Eligible Employee declines coverage because the Eligible Employee is covered under another insurance plan.

     B.      *Non-Duplication of Coverage for Family Members*

Except as provided in part V.C, there may not be more than one Eligible Employee with a familial relationship, e.g., parent-child or other relationship in which one Employee is the beneficiary under the Fund of another Employee, either of which could be an "Eligible Employee." Thus, the Employer may not be required to make contributions to the Fund, as required by section 28 of the CBA or this side letter, on behalf of two or more Employees in a familial relationship, nor shall such additional Employee-family members be potentially eligible for receiving the Declination Payment.

     C.      *Eligible Employee Spouses*

The Employer shall make contributions to the Fund for each Eligible Employee who is the spouse of another Eligible Employee, where both enroll as individual participants only. Where, however, an otherwise Eligible Employee participates as a spouse-beneficiary of another Eligible Employee, the spouse-beneficiary shall receive the Declination Payment each month in which he/she would otherwise be an Eligible Employee.

VI.     *Confidentiality*

The parties agree that in order to accomplish the parties' objectives, neither this side letter nor its existence shall be communicated or provided to anyone other than officers, employees, or agents of the Employer, Union, and Fund who have a need to know this information, including Eligible Employees. The parties agree that the intent and purpose of this confidentiality provision is to prevent other hotel companies from knowing the details of this side letter such that it might

4

be misconstrued as something other than a trial to advance the provision, and more precise funding of, quality health care benefits.

Sincerely,


Gary Sims
Managing Director


Acknowledged and agreed upon:


_____
Brigette Browning, President
UNITE HERE Local 30, AFL-CIO