1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

11

ENRIQUE MARTINEZ, and ERIC TRUMPE,

Case No. 20-cv-1924-MMA (BLM)

12

Plaintiffs,

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DECLINING TO RULE ON DEFENDANT'S MOTION TO DISMISS OR STAY**

13

14

v.

15

OMNI HOTELS MANAGEMENT CORPORATION,

16

Defendant.

[Doc. Nos. 16, 17]

17

18

19        Plaintiffs Enrique Martinez and Eric Trumpe (collectively, "Plaintiffs") allege that

20   Omni Hotels Management Corporation ("Defendant") violated the California Private

21   Attorney General Act ("PAGA") through paying low overtime and sick leave rates and

22   failing to provide rest breaks, accurate wage statements, and wages due at termination.

23   *See* Doc. No. 1-2 ("Compl.") ¶¶ 18, 30–35.  Defendant removed this action from the

24   Superior Court of California, County of San Diego, to the United States District Court for

25   the Southern District of California pursuant to 28 U.S.C. § 1441 and on the basis of

26   federal question jurisdiction under 28 U.S.C. § 1331.  *See* Doc. No. 1.

27        Two motions are pending before the Court.  *See* Doc. Nos. 16, 17.  Defendant

28   moves to dismiss or stay the action pursuant to the *Colorado River* doctrine or,

1

alternatively, pursuant to the Federal Arbitration Act or the collective bargaining agreement's arbitration clause. Doc. No. 16-1 at 5–6. *See* Doc. No. 16 at 2[1] (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). Plaintiffs move to remand the action to state court pursuant to 28 U.S.C. § 1447 based on the lack of subject matter jurisdiction. *See* Doc. No. 17 at 1–2. Plaintiffs and Defendant oppose each other's motions, and each have filed replies. *See* Doc. Nos. 19, 20, 21, 23. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. Nos. 22, 24. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion to remand and declines to rule on Defendant's motion to dismiss or stay.

## I. BACKGROUND

Plaintiffs worked as banquet servers for Defendant at the Omni La Costa Spa and Resort. Compl. ¶ 1. Plaintiffs allege that Defendant "[p]aid an illegally low overtime rate," "[p]aid an illegally low paid sick leave rate," "[f]ailed to authorize and permit rest breaks," "[f]ailed to provide accurate wage statements," and "[f]ailed to pay all wages due upon termination of the employment relationship." *Id.* ¶ 18. In particular, Defendant did not include service fee bonuses in calculating overtime and sick pay, which resulted in a significant underpayment of overtime wages. *See id.* ¶¶ 19, 23. Defendant further maintains "a practice and policy of failing to authorize or permit rest breaks" and "reprimand[s] employees who do take rest breaks." *Id.* ¶¶ 25, 27. Because of these failures, Defendant did not provide accurate wage statements or full wages owed at Plaintiffs' termination. *See id.* ¶¶ 28, 29.

On July 1, 2020, Plaintiffs filed their Complaint in state court. *See id.* at 1. Plaintiffs allege a single cause of action for violation of PAGA, California Labor Code §§ 2698–2699.5, and seek civil penalties for violations of the California Labor Code. *See*

---

[1] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

*id.* ¶¶ 30–35.  On September 25, 2020, Defendant removed the action to this Court.  Doc. No. 1.  Shortly after removal, Defendant filed its motion to dismiss or stay, and Plaintiffs filed their motion to remand.  *See* Doc. Nos. 16, 17.

## II. MOTION TO REMAND

The Court proceeds by first addressing Plaintiffs' motion to remand because it challenges the Court's subject matter jurisdiction.

### A. Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute." *Id.* at 377.  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  The party seeking federal jurisdiction bears the burden to establish jurisdiction. *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).  Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity between the parties, *see* 28 U.S.C. § 1332.

Pursuant to 28 U.S.C. § 1331, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The existence of federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A well pleaded complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27 (1983).

Pursuant to 28 U.S.C. § 1332(a)(1), a federal district court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the dispute is between citizens of different states.  28

U.S.C. § 1332(a)(1).  The Supreme Court has interpreted § 1332 to require "complete diversity of citizenship," meaning each plaintiff must be diverse from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  If a matter is removable solely on the basis of diversity jurisdiction pursuant to § 1332, the action may not be removed if any properly joined and served defendant is a citizen of the forum state.  *See* 28 U.S.C. § 1441(b)(2).

Additionally, 28 U.S.C. § 1441(a) provides for removal of a civil action from state to federal court if the case could have originated in federal court.  The removal statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

**B. Discussion**

Defendant removed the action to this Court on the basis of federal question jurisdiction because "the Complaint implicates Section 301 of the Labor Management Relations Act" ("LMRA") in light of the parties' collective bargaining agreement ("CBA").[2]  Doc. No. 1 ¶ 6.

Plaintiffs argue that remand is required because (1) the Complaint fails to raise a federal question required to resolve the state claim, (2) anticipated or potential defenses to the state claim cannot sustain removal, and (3) any references to the CBA "will simply

---

[2] Defendant requests the Court take judicial notice of the CBA.  *See* Doc. No. 21-2.  In their reply brief, Plaintiffs do not appear to oppose the request.  *See* Doc. No. 23.  The Court **GRANTS** Defendant's request for judicial notice.  *See Crescenciano Garcia v. The Wine Grp., Inc.*, No. 1:19-cv-01222-DAD-JDP, 2020 WL 6445023, at *2 n.2 (E.D. Cal. Nov. 3, 2020) (granting an unopposed request for judicial notice of a CBA in considering a motion to remand, which addressed § 301 preemption); *Alcala v. Republic Bag, Inc.*, No. EDCV 18-272 JGB (SHKx), 2018 WL 1633588, at *1 n.2 (C.D. Cal. Apr. 3, 2018) (granting a request for judicial notice of a CBA in considering a motion to remand, which addressed § 301 preemption); *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180, 1187 (E.D. Cal. 2016) (granting a request for judicial notice of three CBAs brought in conjunction with a motion to dismiss but then also relying upon the CBAs in simultaneously addressing a motion to remand, which addressed § 301 preemption).

be references to the [CBA] to determine rates of pay, and not interpretation or construction of the terms of the [CBA]." Doc. No. 17 at 1–2; *see also* Doc. No. 17-1 at 5; Doc. No. 23 at 1. Plaintiffs contend that CBA's presence does not raise a federal question because Plaintiffs' cause of action does not "arise entirely" from the CBA and any reference to the CBA will be "minimal" and not "substantially depend" on constructing contested CBA terms. Doc. No. 17-1 at 10, 12. In particular, Plaintiffs differentiate civil penalties owed under a PAGA action from damages owed for unpaid wages. *See id.* at 10; *see also* Doc. No. 23 at 1–2. Plaintiffs argue that "CBA carve-out defenses under the California Labor Code . . . are affirmative defenses for the purpose of the Well Pleaded Complaint Rule and their being raised does not create [f]ederal subject matter jurisdiction." Doc. No. 23 at 6. Further, Plaintiffs assert the dispute "does not require a construction or interpretation of the CBA" because the Court merely needs to reference the "straightforward" hourly rates detailed in the CBA. *Id.* at 9.

Defendant responds that Plaintiffs' allegations concerning "rights for overtime and sick pay are conferred upon them by the CBA." Doc. No. 21 at 6. Defendant further contends that Plaintiffs' claims are preempted because they substantially depend on the CBA's interpretation—regardless of whether Plaintiffs' claims are conferred by state law and not the CBA. *Id.* Defendant argues that Plaintiffs' claim "is precluded by the statutory CBA exemptions under Labor Code sections 245.5(a)(1) and 514" and Plaintiffs' exclusion of the CBA from their Complaint does not alter how rights are conferred. *Id.* at 12–13. Furthermore, to determine the rate that forms the basis for overtime and sick time, Defendant argues that the Court will need to "analyze the terms of the CBA." *Id.* at 16.

Generally, removal is not appropriate when it is grounded in "a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393. However, there is an "an 'independent corollary' to the well-pleaded complaint rule": the complete preemption doctrine. *Id.*

(quoting *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 22). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* Section 301 of the LMRA holds such complete preemptive force. *See id.* at 394; *see also Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) ("In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court.").

Despite complete preemption, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). To ensure § 301 preemption maintains its proper boundaries, courts in the Ninth Circuit apply a two-step test. *Id.* (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 913–14 (9th Cir. 2018)).

> First, we ask whether the asserted cause of action involves a "right [that] exists solely as a result of the CBA." The essential inquiry is this: Does the claim seek "purely to vindicate a right or duty created by the CBA itself[?]" If so, "then the claim is preempted, and [the] analysis ends there."

*Id.* at 1152–53 (citations omitted) (first quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016); then quoting *Schurke*, 898 F.3d at 921; and then quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). If the claim is not preempted, the court continues to the second step and asks

> "whether a plaintiff's state law right is substantially dependent on analysis of [the CBA]," which turns on whether the claim cannot be resolved by simply "look[ing] to" versus "interpreting" the CBA. We have stressed that "interpretation" is construed narrowly in this context. At this second step of the analysis, "claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" Accordingly, a state law

20-cv-1924-MMA (BLM)

claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA.

*Id.* at 1153 (citations omitted) (first quoting *Kobold*, 832 F.3d at 1033; then quoting *Schurke*, 898 F.3d at 921).

As an initial matter, Plaintiffs attempt to differentiate PAGA claims from CBA-based claims. *See* Doc. No. 17-1 at 10–11; Doc. No. 23 at 2, 3, 6–7. Plaintiffs bring a PAGA claim for violations of the Labor Code instead of bringing a Labor Code claim; accordingly, Plaintiffs seek civil penalties instead of wages. *See id.* at 12; *see also* Doc. No. 17-1 at 10; Doc. No. 23 at 2, 6. Under either legal theory, the Court must still "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Schurke*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 123). The Court finds Plaintiffs' distinction between bringing PAGA claim for civil penalties versus bringing a Labor Code claim for wages is irrelevant for the purposes of preemption. *See Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV 20-00309 JVS (JDEx), 2020 WL 1934958, at *1, *5, *6 (C.D. Cal. Apr. 22, 2020) (denying a motion to remand after finding that the Court had federal question jurisdiction over the plaintiff's single PAGA claim premised on Labor Code violations); *Peters v. RFI Enterprises, Inc.*, No. 18-cv-02771-BLF, 2018 WL 3869565, at *1, *6, *8 (N.D. Cal. Aug. 15, 2018) (granting a motion to remand after finding that the defendant did not show that § 301 preempted the plaintiff's single PAGA claim premised on Labor Code violations); *cf. Schurke*, 898 F.3d at 922 (quoting *Livadas*, 512 U.S. at 125) (referencing the computation of a "penalty" to identify the wage rates in the second step of the Ninth Circuit's two-step framework).[3] At the core of the Complaint, Plaintiffs seek to vindicate

---

[3] To find otherwise would allow for artful pleading of PAGA claims—premised on Labor Code violations—to circumvent congressional intent regarding collective bargaining agreements and preemption. *Cf. Curtis*, 913 F.3d at 1152 (quoting *Schurke*, 898 F.3d at 918–19) (noting the reasons for federal preemption under § 301).

1   labor rights disregarded by Defendant concerning unpaid overtime, unpaid sick leave,

2   unpermitted rest breaks, inaccurate wage statements, and unpaid wages at termination.

3   *See* Compl. ¶¶ 18, 30–35.  Thus, the Court looks through the PAGA claim to assess the

4   underlying Labor Code claims.

5        Plaintiffs' other wage-related claims stem from the same underlying allegation:

6   Defendant's alleged failure to include bonus or service fees in calculating overtime and

7   sick leave pay.  *See* Compl. ¶¶ 19, 21–24, 28–29.  Defendant's basis for removal is that

8   Plaintiffs' allegations concerning overtime and sick leave pay are preempted by the

9   LMRA.  *See* Doc. No. 1 ¶¶ 20–25; *see also* Doc. No. 21 at 6, 11, 12, 14, 16.  In

10  addressing whether Plaintiffs' allegations sustain federal question jurisdiction through

11  LMRA § 301 preemption, Court addresses Plaintiffs' underlying overtime and sick leave

12  pay Labor Code claims in turn.

13  **1. Overtime Pay Rate**

14      **a. Step 1: Whether the Right Exists Solely as a Result of the CBA**

15       Plaintiffs ground their PAGA allegations of Defendant paying an illegally low

16  overtime rate in Labor Code § 510.[4]  *See* Compl. ¶ 33; Doc. No. 17-1 at 10.  Defendant

17  _____

18

19  [4] The relevant part of § 510 reads as follows:

20      (a) Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in
    one workday and any work in excess of 40 hours in any one workweek and the first eight

21      hours worked on the seventh day of work in any one workweek shall be compensated at
    the rate of no less than one and one-half times the regular rate of pay for an employee.

22      Any work in excess of 12 hours in one day shall be compensated at the rate of no less
    than twice the regular rate of pay for an employee.  In addition, any work in excess of

23      eight hours on any seventh day of a workweek shall be compensated at the rate of no less
    than twice the regular rate of pay of an employee.  Nothing in this section requires an

24      employer to combine more than one rate of overtime compensation in order to calculate
    the amount to be paid to an employee for any hour of overtime work.  The requirements

25      of this section *do not apply to* the payment of overtime compensation to an employee
    working pursuant to any of the following: . . . . (2) An alternative workweek schedule

26      adopted *pursuant to a collective bargaining agreement pursuant to Section 514.*

27

28  Cal. Lab. Code § 510(a) (emphasis added).

argues that Plaintiffs' overtime claim is precluded by a statutory exception, Labor Code § 514,[5] when there is a CBA.  *See* Doc. No. 21 at 12.  Plaintiffs reply that this statutory exemption is an affirmative defense under the well pleaded complaint rule and does not support federal question jurisdiction.  *See* Doc. No. 23 at 6.

In the first step of determining whether LMRA § 301 preempts Plaintiffs' overtime allegations, the Court must determine whether Plaintiffs' action involves a right that exists solely as a result of the CBA.  *See Curtis*, 913 F.3d at 1152–53 (citations omitted) (first quoting *Kobold*, 832 F.3d at 1032; then quoting *Schurke*, 898 F.3d at 921; and then quoting *Burnside*, 491 F.3d at 1059).

The Court notes a split between the district courts on whether the § 514 statutory exemption is sufficient to find that LMRA § 301 preempts a state law claim.  *See Diaz v. Sun-Maid Growers of California*, No. 1:19-cv-00149-LJO-SKO, 2019 WL 1785660, at *4 (E.D. Cal. Apr. 24, 2019); *Young v. Securitas Sec. Servs. USA, Inc.*, No. 17-cv-05342-JCS, 2018 WL 1142190, at *6–7 (N.D. Cal. Mar. 2, 2018).[6]  The Court finds the Ninth

---

[5] Section 514 reads as follows:

> *Sections 510* and 511 *do not apply to an employee covered by a valid collective bargaining agreement if* the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514 (emphasis added).

[6] *Compare Linebarger*, 2020 WL 1934958, at *5 (finding that the defendant satisfied the first step of the preemption test where § 514 is an exemption to § 510 and the CBA provided for "working conditions, wage rates, and overtime hours worked"), *Diaz*, 2019 WL 1785660, at *7 (finding that the plaintiff's overtime claim was preempted by § 301 because the plaintiff's "overtime right" was grounded in the CBAs and such rights under § 510 are "negotiable and dependent"), *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203 (C.D. Cal. 2015) (finding that the plaintiff's claim for overtime compensation was preempted because the CBA applied via § 514 instead of the Labor Code), *and Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1099–00 (N.D. Cal. 2014) (finding that the § 514 exemption applied and, thus, the plaintiff's failure to pay overtime claim arising out of the CBA and is preempted by § 301), *with Peters*, 2018 WL 3869565, at *4 (finding that the defendant failed to satisfy the first step of the preemption test because an exception such as § 514 is an insufficient grounds for preemption

Circuit's ruling in *Curtis v. Irwin Industries, Inc.* is decisive in demonstrating that a plaintiff's right to unpaid overtime is preempted under the first step of the Ninth Circuit's preemption test if a CBA meets the requirements of § 514. *See Gunther v. N. Coast Coop., Inc.*, No. 20-cv-02325-RMI, 2020 WL 3394547, at *4 (N.D. Cal. June 19, 2020) (citing *Curtis*, 913 F.3d at 1154).

As a preliminary matter, preemption attaches to a CBA dispute dressed in state law garb. *Schurke*, 898 F.3d at 921 (citing *Livadas*, 512 U.S. at 122–23). "Artful pleading" and "complete preemption" doctrines cannot be ignored in a preemption analysis. *Diaz*, 2019 WL 1785660, at *5 (first citing *Caterpillar Inc.*, 482 U.S. at 391–394; and then citing *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041–42 (9th Cir. 2003)). Courts have found defensive reliance on a CBA a means to trigger LMRA § 301 preemption under certain circumstances. *See Curtis*, 913 F.3d at 1153–54, 1155; *Diaz*, 2019 WL 1785660, at *5 (quoting *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002)); *see also Gunther*, 2020 WL 3394547, at *4.

In *Curtis*, the plaintiffs brought claims in California state court under the California Labor Code, stemming from the theory that twelve off-duty hours counted as "hours worked." 913 F.3d at 1150. The plaintiffs brought overtime, meal and rest period, minimum wage, and derivative claims. *Id.* Relying on LMRA § 301 and the Outer Continental Shelf Lands Act, the defendant removed the action to district court. *Id.* The

---

because such an affirmative defense does not alter a right created by state law), *Young*, 2018 WL 1142190, at *7 (finding that plaintiff's claim for overtime was not preempted because the § 514 exception is an affirmative defense that does not give rise to § 301 preemption), *Lopez v. Sysco Corp.*, No. 15-cv-04420-JSW, 2016 WL 3078840, at *4 (N.D. Cal. Jan. 25, 2016) (finding that the plaintiff's claim for meal period claims were not preempted under the first prong because "invoking an exemption to a Labor Code provision is an affirmative defense" and § 301 preemption is not required when the defendant refers to the CBA in defense), *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 954 (C.D. Cal. 2014) (finding that the plaintiff's claim for overtime compensation was not preempted because § 514 did not alter the substance of the plaintiff's claim and was a defense to the overtime claim that did not give rise to preemption under § 301), *and Placencia v. Amcor Packaging Distribution, Inc.*, No. SACV 14-0379 AG (JPRx), 2014 WL 2445957, at *2 (C.D. Cal. May 12, 2014) (finding that the plaintiff's wage and hour claims did not arise from the CBA and thus were not preempted by § 301 where § 514 was merely a defense).

defendant then moved to dismiss the plaintiffs' claims on § 301 preemption grounds, which the court granted.  *Id.* at 1151.  The Ninth Circuit held that the overtime pay claim was preempted under § 301 "because California overtime law does not apply to an employee working under a qualifying collective bargaining agreement, Cal. Lab. Code § 514, and Curtis worked under such an agreement."  *Id.*  at 1150.  In reaching the holding, the Ninth Circuit read § 514 together with § 510:

> By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA.  If Curtis's CBAs in this case meet the requirements of section 514, Curtis's right to overtime "exists solely as a result of the CBA," and therefore is preempted under § 301.

*Id.* at 1153–54 (citing *Kobold*, 832 F.3d at 1032).  Therefore, Ninth Circuit precedent instructs courts to assess the § 514 statutory exemption in assessing Plaintiffs' § 510 overtime allegations in the preemption context.

If the requirements of § 514 are satisfied, then Plaintiffs' overtime allegations are preempted.  *See id.* at 1154.  Section 514's requirements include (1) "a valid [CBA]" (2) that provides for "the wages, hours of work, and working conditions of the employees" and also (3) provides "premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."  Cal. Lab. Code § 514.  Here, the parties do not dispute the existence of a valid CBA.  *See* Doc. No. 17 at 2; Doc. No. 21 at 3; Doc. No. 23 at 2–3, 8–9.  Indeed, Plaintiffs point to specific language of the CBA in arguing that sections of the CBA are clear and undisputed for the purpose of the second step of the preemption analysis.  *See* Doc. No. 23 at 8–9.  Thus, the first requirement is satisfied.  The CBA provides wage scales, work schedules and overtime, gratuities and service charges, banquet employee compensation, reporting and meeting pay, sick leave, and general work condition

1  provisions.  *See* Doc. No. 21-3 at 3, 8–11, 12–19 (CBA §§ 2(a), 7–9, 11–15).  These

2  provisions satisfy the second requirement.

3      However, the parties dispute the third and final requirement of § 514: whether the

4  CBA provides "a regular hourly rate of pay not less than 30 percent more than the state

5  minimum wage."  Cal. Lab. Code § 514.  Defendant argues that the CBA satisfies this

6  requirement when including service fees or charges.  *See* Doc. No. 21 at 6 ("[T]he CBA

7  sets forth the . . . regular rates of pay, inclusive of service fees, of thirty percent (30%)

8  more than the state minimum wage."); *see also id.* at 9, 14; Belef Decl., Doc. No. 21-1

9  ¶ 8.  Plaintiffs counter that Defendant cannot enjoy the § 514 exemption because

10  Plaintiffs "are not paid a 'regular hourly rate' of at least 1.3 times the state minimum

11  wage."  Doc. No. 23 at 4 (emphasis omitted); *see also id.* at 9.  Plaintiffs refer to

12  "Schedule A" of the CBA which shows banquet servers, such as Plaintiffs, were paid

13  "minimum wage."  *Id.* at 4 (citing Doc. No. 21-3 at 37 (CBA Schedule A)).

14      The party seeking the Court's subject matter jurisdiction carries the burden to

15  establish jurisdiction and, moreover, § 514 is an affirmative defense with the employer

16  carrying the burden to prove the exemption.  *See Kokkonen*, 511 U.S. at 377 (citing

17  *McNutt.*, 298 U.S. at 182–83); *Ramirez v. Yosemite Water Co.*, 978 P.2d 2, 8 (1999) (first

18  citing *Nordquist v. McGraw-Hill Broad. Co.*, 38 Cal. Rptr. 2d 221, 225 (Ct. App. 1995);

19  and then citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 197–98 (1974)) ("[T]he

20  assertion of an exemption from the overtime laws is considered to be an affirmative

21  defense, and therefore the employer bears the burden of proving the employee's

22  exemption.").  Therefore, Defendant carries the burden to establish that the CBA

23  provides a regular hourly pay rate of not less than 30 percent more than the state

24  minimum wage.  The Court finds that Defendant has not carried its burden.

25      Schedule A of the CBA clearly states that a banquet server earns "[m]inimum

26  wage."  Doc. No. 21-3 at 37 (CBA Schedule A).  The CBA provides that the "[t]he wage

27  scales set forth in Schedule A attached hereto are minimum wages to be paid to

28  employees working in these classifications.  Nothing in this Agreement shall be

construed to prevent increases at the Employer's discretion in individual rates or classifications over and above the minimum specified." Doc. No. 21-3 at 8 (CBA § 7(a)). In a signed declaration, Defendant's Director of Human Resources states "[t]aking into account service charges, employees in certain classifications, such as Plaintiffs, were paid at a regular rate of more than 130% of the state minimum wage." Belef Decl., Doc. No. 21-1 ¶ 8. The declaration fails to provide support to show what the ultimate regular rate is when including service charges beyond the mere conclusory statement echoing the language of the statute. In sum, Defendant does not sufficiently demonstrate that Plaintiffs' regular rate is at least 30% more than the minimum wage. Without this information, the Court is left with Schedule A that clearly shows that banquet servers are paid minimum wage. *See* Doc. No. 21-3 at 37 (CBA Schedule A).

Because the CBA fails to satisfy all of § 514's requirements, § 514 does not prevent § 510's application to Plaintiffs. *See Huffman v. Pac. Gateway Concessions LLC*, No. 19-cv-01791-PJH, 2019 WL 2563133, at *6 (N.D. Cal. June 21, 2019). Accordingly, Plaintiffs' overtime allegations do not involve a right that exists solely as a result of the CBA, and the overtime allegations are not preempted under step 1. *See Gunther*, 2020 WL 3394547, at *5; *Huffman*, 2019 WL 2563133, at *6. Because the overtime allegations are not preempted at step one, the Court proceeds to step two.

### b. Step 2: Whether the State Law Right Is Substantially Dependent on the CBA

In the second step of determining whether LMRA § 301 preempts Plaintiffs' overtime allegations, the Court must determine whether Plaintiffs' state law right is substantially dependent on analyzing the CBA. *See Curtis*, 913 F.3d at 1153 (quoting *Kobold*, 832 F.3d at 1033).

In Defendant's notice of removal and opposition to remand, it argues Plaintiffs' allegations will require interpretation of several CBA provisions. *See* Doc. No. 1 ¶¶ 20, 24, 25; Doc. No. 21 at 14–16. To determine the rate needed to serve as the basis for Plaintiffs' overtime and sick pay claims, Defendant argues that the CBA must be

1    analyzed to understand how to calculate compensation.  *See* Doc. No. 21 at 16.  In

2    particular, Defendant contends "the CBA must be analyzed and interpreted to determine

3    whether 'hourly rate' was intended to include the 'service fees' that Defendant pays its

4    employees above and beyond the straight hourly rate."  *Id.*  In moving to remand,

5    Plaintiffs assert that the CBA will merely need to be referenced.  *See* Doc. No. 17-1 at 12.

6    They argue that any referenced section in the CBA is clear and undisputed.  *See id.* at 7–8

7    (citing CBA §§ 8(i), 15(d), 11, 12).  Taking issue with Defendant's argument that an

8    interpretation of the "hourly rate" is necessary, Plaintiffs counter that "[t]he term 'regular

9    hourly rate' is a creature of California state law, and constructing it will depend on

10   cannons of statutory construction, not interpretation of the CBA in this matter."  Doc. No.

11   23 at 9.

12          Plaintiffs base their right to overtime wages under state law, specifically Labor

13   Code § 510 and the construction of "regular hourly rate," independent of the CBA.  *See*

14   Compl. ¶¶ 1, 18, 20, 33; Doc. No. 17-1 at 10, 12; *see also* Cal. Lab. Code § 510(a).

15   However, Plaintiffs' allegations connect to several provisions of the CBA.  For example,

16   Plaintiffs claim Defendant calculated overtime based only on the hourly rate and failed to

17   include all earnings, such as service fee bonuses, in the overtime calculation.  *See* Compl.

18   ¶¶ 22–24.  The references to overtime, service fees, banquet-specific service fees, and the

19   hourly rate all implicate the CBA.  *See* Doc. No. 21-3 at 10–11, 12–16 (CBA §§ 8(i), 11,

20   12).

21          Despite the connection between the CBA and the right provided by § 510,

22   "reliance on and reference to CBA-established or CBA-defined terms of employment do

23   not make for a CBA dispute if there is no disagreement about the meaning or application

24   of any relevant CBA-covered terms of employment."  *Schurke*, 898 F.3d at 927.  The

25   preemption analysis is tailored to the "legal character" of the claim.  *Id.* at 926 (citing 512

26   U.S. at 123).  If Plaintiffs' § 510 claim can be resolved "resolved without infringing on

27   the role of grievance and arbitration," there is no preemption.  *Id.*  Here, Defendant

28   appears to argue that there is a dispute over the term "hourly rate" and whether the hourly

rate includes service fees. *See* Doc. No. 21 at 16.  However, Defendant has not shown that there is an actual dispute over the meaning or application of a relevant CBA term.

In their Complaint, Plaintiffs allege that Defendant owes them unpaid overtime wages. *See* Compl. ¶ 19.  Plaintiffs claim Defendant pays employees "an hourly rate, *and* a bonus or 'service fees.'" *Id.* ¶ 22 (emphasis added).  Plaintiffs aver that Defendant underpaid them by failing to include service fees "up and above each employees' simple hourly rate" in the "overtime base rate calculations." *Id.* ¶¶ 19, 23.  Instead, Plaintiffs claim Defendant "simply pa[id] overtime based on the hourly rate." *Id.* ¶ 23.  Plaintiffs' allegations reveal that the hourly rate is distinct and does not include service fees.

Opposing Plaintiffs' motion to remand, Defendant argues the CBA must be interpreted to unearth the meaning of "hourly rate" and, in particular, whether service fees are included in the hourly rate. *See* Doc. No. 21 at 16.  Under CBA section 8(i), titled "Work Schedules and Overtime," employees are "paid overtime of one and one-half (1-½) times the employee's *hourly rate* for work." Doc. No. 21-3 at 10 (CBA § 8(i)) (emphasis added).  Section 8(i) then outlines the length of work required for an employee to earn overtime pay. *See* Doc. No. 21-3 at 10–11 (CBA § 8(i)(i)–(iii)).  Section 8(i) concludes that "[e]mployees shall be paid straight-time and overtime based on actual time worked without rounding.  Overtime will not be pyramided with any other premium rate." Doc. No. 21-3 at 11 (CBA § 8(i)).

Defendant appears to misread Plaintiffs' allegations.  A court does not need to interpret whether the hourly rate was intended to include service fees because Plaintiffs allege that service fees are separate from, and do not comprise part of, the hourly rate. *See* Compl. ¶ 22; *see also id.* ¶¶ 19, 23; Doc. No. 17-1 at 6.  Plaintiffs claim that the overtime payment calculation failed to consider the service fees in addition to the separate hourly rate.  Defendant injects a hypothetical need for a court to interpret the meaning of "hourly rate."  Notably, Defendant does not provide its position on the term's meaning and, thus, fails to show how there is active dispute over the meaning of "hourly rate."  "Claims are only preempted to the extent there is an active dispute over 'the

meaning of contract terms.'" *Schurke*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 124).  Absent an active dispute over the terms of the CBA, Defendant's hypothetical connection between Plaintiffs' § 510 claim and the CBA is insufficient to trigger preemption.  *See id.* (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)); *see also Cramer*, 255 F.3d at 692, ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility").  In sum, Defendant has failed to carry its burden that there is an active, genuine dispute over the term "hourly rate."

At the second step of the preemption analysis, "interpretation" is construed narrowly: "it means something more than 'consider,' 'refer to,' or 'apply.'" *Curtis*, 913 F.3d at 1153; *Kobold*, 832 F.3d at 1033 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)).  Here, no interpretation is required.  The text of the overtime provision clearly notes that overtime pay is based on the "hourly rate."  *See* Doc. No. 21-3 at 10 (CBA § 8(i)).  Plaintiffs allege the hourly rate is separate from service fees.  *See* Compl. ¶¶ 22–23.  Defendant does not show an active dispute over the term "hourly rate."  A court would only have to refer to and apply the hourly rates supplied in Schedule A, which outlines the wages for each position, to the CBA to calculate any owed overtime pay.  *See* Doc. No. 21-3 at 37 (CBA Schedule A).

Mere reference to the CBA is insufficient to show that a claim is substantially dependent on the CBA.  *See Schurke*, 898 F.3d at 920, 921–22 (quoting *Livadas*, 512 U.S. at 125).  In addition to Defendant's unsuccessful attempt to show an active dispute over the meaning of "hourly rate," Defendant has not specifically and concretely addressed other CBA terms or sections that would raise an active dispute.  In sum, Defendant has not carried its burden to show an active dispute over the meaning of the CBA's terms or that they require interpretation.  Accordingly, the overtime allegations are not preempted under step two.

**c. Conclusion**

Because Defendant has not shown that preemption is warranted under either step one or step two, Plaintiffs' claim for overtime pay is not preempted by LMRA § 301 of the LMRA.

## 2. Sick Leave Pay Rate

### a. Step 1: Whether the Right Exists Solely as a Result of the CBA

Plaintiffs ground their PAGA allegations of Defendant paying an illegally low sick leave rate in Labor Code § 246(*l*)(1)–(2).[7]  *See* Compl. ¶ 33; Doc. No. 17-1 at 10. Defendant argues that Plaintiffs' overtime claim is precluded by a statutory exception, Labor Code § 245.5(a)(1),[8] when there is a CBA.  *See* Doc. No. 21 at 12.  The parties'

---

[7] The relevant part of § 246 reads as follows:

(*l*) For the purposes of this section, an employer shall calculate paid sick leave using any of the following calculations:

(1) Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek.

(2) Paid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment.

Cal. Lab. Code § 246(*l*)(1)–(2).

[8] Section 245.5(a)(1) reads as follows:

(a) "Employee" does not include the following:

(1) An employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 245.5(a)(1).

20-cv-1924-MMA (BLM)

arguments parallel those made regarding overtime.  *See* Doc. No. 17-1 at 9–10, 11–12; Doc. No. 21 at 12–14, 16; Doc. No. 23 at 2, 3–4, 7, 9.

At step one, the Court finds that Plaintiffs' sick pay allegations are not preempted at step one for the same reasons regarding overtime.  Similar to the overtime exemption under § 514, the sick pay exemption under § 245.5(a)(1) requires the CBA to provide for an "regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate."  Cal. Lab. Code § 245.5(a)(1).  As noted above, Defendant has not carried its burden to demonstrate that Plaintiffs' regular rate is at least 30% more than the minimum wage.  *See supra* Section II.B.1.a.  Because the CBA fails to satisfy all of § 245.5(a)(1)'s requirements, § 245.5(a)(1) does not prevent § 246(*l*)(1)–(2)'s application to Plaintiffs. Accordingly, Plaintiffs' sick pay allegations do not involve a right that exists solely as a result of the CBA, and Plaintiffs' sick pay allegations are not preempted under step one.

### b. Step 2: Whether the State Law Right Is Substantially Dependent on the CBA

At step two, in addition to the lack of an active dispute over the meaning of the CBA's terms or that they require interpretation as noted above, *see supra* Section II.B.1.b, the Court finds that Plaintiffs' sick pay allegations are not substantially dependent on the CBA for an additional reason.

Under CBA section 15(d), titled "Sick/Personal Leave," "[s]ick/personal leave shall be paid at the employee's Schedule A rate, except as otherwise required by HWHFA."  Doc. No. 21-3 at 18 (CBA § 15(d)).  Even if there were an actual dispute over the meaning of "hourly rate" for the purpose of calculating sick pay, the Court merely needs to look to the clear language of the CBA—not interpret the CBA.  Again, "interpretation" is construed narrowly: "it means something more than 'consider,' 'refer to,' or 'apply.'"  *Curtis*, 913 F.3d at 1153; *Kobold*, 832 F.3d at 1033 (quoting *Balcorta*, 208 F.3d at 1108).  Here, no interpretation is required because the text of the sick pay provision clearly notes that sick pay is based on the rate listed in Schedule A, which outlines the wages for each position.  *See* Doc. No. 21-3 at 18 (CBA § 15(d), Schedule

A); *see also Controulis v. Anheuser-Busch*, No. CV 13-07378 RGK (AJWx), 2013 WL 6482970, at *2 (C.D. Cal. Nov. 20, 2013) (finding no § 301 preemption and remanding the action where the CBA provided that the overtime rate was based on the "regularly hourly rate," which was then defined in the CBA as the straight-time rate). In addition to the reasons regarding the overtime allegations, *see supra* Section II.B.1.b, Defendant does not carry its burden to show how the CBA requires interpretation in light of CBA section 15(d) or how there is any genuine dispute as to the meaning of section 15(d). *See Schurke*, 898 F.3d at 921–22 (quoting *Cramer*, 255 F.3d at 692) (stating that a state law claim is not preempted when the claim requires a court to refer to and apply plain or undisputed language of a CBA). A court does not need to interpret whether service fees are or should be included in calculating sick pay because the undisputed, plain language of section 15(d) calculates sick pay based on the wage rates listed in Schedule A. *See* Doc. No. 21-3 at 18 (CBA § 15(d)). At most, a court may be required to refer to or apply the pay rate listed in Schedule A of the CBA to determine any owed sick pay. "[W]hen the terms of the CBA are so clear that there is absolutely no danger of inconsistent interpretations, [] preemption is unnecessary." *McKinley v. Sw. Airlines Co.*, No. CV 15-02939-AB (JPRx), 2015 WL 2431644, at *8 (C.D. Cal. May 19, 2015), *aff'd*, 680 F. App'x 522 (9th Cir. 2017) (analyzing Railway Labor Act preemption, which uses the same preemption standard as the LMRA). Accordingly, Plaintiffs' sick pay allegations are not preempted under step two.

### c. Conclusion

Because Defendant has not shown that preemption is warranted under either step one or step two, Plaintiffs' claim for sick leave pay is not preempted by LMRA § 301.

### 3. Remaining Claims

In addition to their overtime and sick pay allegations, Plaintiffs further allege that Defendant failed to provide rest breaks, accurate wage statements, and wages due at termination. *See* Compl. ¶¶ 18, 30–35. Defendant requests the Court to exercise supplemental jurisdiction over these remaining allegations. *See* Doc. No. 21 at 16.

20-cv-1924-MMA (BLM)

A district court may exercise supplemental jurisdiction over claims brought with a LMRA-preempted claim.  *See Ellis v. Gelson's Markets*, 1 F.3d 1246 (9th Cir. 1993); *Diaz*, 2019 WL 1785660, at *8.  Because Defendant has not met its burden to show that any of Plaintiffs' claims are preempted by the LMRA, this Court lacks subject matter jurisdiction over this action and cannot exercise supplemental jurisdiction over Plaintiffs' remaining claims.  *See Moore v. Aramark Unif. Servs., LLC*, No. 17-cv-06288-JST, 2018 WL 701258, at *5 (N.D. Cal. Feb. 5, 2018).

### 4. Conclusion

Because the Court finds that Defendant has not demonstrated that LMRA § 301 preempts Plaintiffs' claim and thus fails to satisfy federal question jurisdiction, the Court lacks subject matter jurisdiction over this action.  Accordingly, the Court **GRANTS** Plaintiffs' motion to remand.

### III. MOTION TO DISMISS OR STAY

In addition to Plaintiffs motion to remand, Defendant moves to dismiss or stay this action pursuant to the *Colorado River* doctrine or, alternatively, pursuant to the Federal Arbitration Act or the CBA's arbitration clause.  Doc. No. 16-1 at 5–6.  Because the Court lacks subject-matter jurisdiction, the Court must dismiss the case.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Accordingly, the Court declines to rule on the merits of Defendant's motion.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion to remand and **REMANDS** this action to the Superior Court of California, County of San Diego. The Court declines to rule on Defendant's motion to dismiss or stay.  The Court **DIRECTS** the Clerk of Court to close the case in its entirety and terminate all pending motions, deadlines, and hearings.

**IT IS SO ORDERED**.

Dated: January 19, 2021

HON. MICHAEL M. ANELLO
United States District Judge